# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: SKYTEC, INC.<br><br>DEBTOR | CASE NO. 18-05288 (ESL 11) |

## LOGISYS's OPPOSITION TO ORIENTAL BANK'S MOTION TO QUASH SUBPOENA FOR RULE 2004 EXAMINATION (DKT. # 116) AND MOTION FOR RECONSIDERATION OF ORDER DATED MARCH 4, 2019 (DKT. #121)

TO THE HONORABLE COURT:

COMES NOW Creditor Logistic Systems, Inc. ("LogiSYS") through the undersigned counsel and very respectfully opposes Oriental Bank's Motion to Quash, Dkt. #116 and moves for reconsideration of this Honorable Court's Order dated March 4, 2019, Dkt. #121 as follows:

### I.  INTRODUCTION

On September 12, 2018, hours after the U.S. District Court for the District of Puerto Rico issued an Opinion and Order in *Skytec, Inc. v. Logistic Systems, Inc.*, Civil No. 15-2104 (BJM), dismissing Skytec's claims with prejudice and entering default on the counterclaims filed by LogiSYS, Skytec filed its petition in bankruptcy in this Court, staying all further litigation in that case.

LogiSys moved this Court for relief from the automatic stay of proceedings against Skytec on October 1, 2018. It requested the Court to lift or modify the automatic stay for the limited purpose of allowing the default damages hearing and request for prevailing party attorneys' fees to proceed before the District Court. This Court granted LogiSYS's motion on November 15, 2018 and modified the automatic stay for the limited purpose of allowing this action to proceed to judgment.

1

The default damages hearing was held on February 13, 2019 and a judgment liquidating LogiSYS's claims is now pending.

In the meantime, the case before this Court has been moving at full speed. Creditors' meetings were held, operating reports have been filed, proofs of claim have been filed, and Skytec has even submitted a Disclosure Statement and Reorganization Plan already. Over two months after the commencement of the case, on November 27, 2018, Debtor and Oriental Bank filed their Joint Stipulation for Interim Use of Cash Collateral and Adequate Protection, *see* Dkt. #67, which LogiSYS objected on December 4, 2018, *see* Dkt. # 71. Debtor even filed its Debtor's Chapter 11 Small Business Disclosure Statement and Plan of Reorganization on January 16, 2019, *see* Dkts. # 91 and 92, and the time is running for all parties to state their acceptance or objections to the Statement and Plan.

LogiSYS filed its proof of claim by the deadline of January 19, 2019, contingent on the liquidation of its claim in the proceedings before the District Court. In addition, Skytec's Disclosure Statement was conditionally approved, and this Court set deadlines for objections to be filed, and set the matter regarding Skytec's Disclosure Statement and Plan for Reorganization for a hearing to take place on **March 26, 2019**.

LogiSYS sent its notice of Rule 2004 examination in the context, not of a mere contested matter involving Oriental, but of the timeline summarized above, where LogiSYS is bound, as a significant, potentially the largest creditor of the Debtor's estate, to submit its acceptance or objection to Debtor's Disclosure Statement and Plan of Reorganization. Those matters are scheduled to be heard at the same time as LogiSYS's objection to Oriental's request for the extension of adequate protection on March 26, 2019, too.

At the time that LogiSYS requested the 2004 Order, this Honorable Court had already granted Debtor's and Oriental's Joint Motion for the Use of Cash Collateral and Adequate Protection, setting

2

the matter to be the subject of an evidentiary hearing as well as for the discussion of the impact of the extension of the adequate protection over the claims of the unsecured creditors. This controversy has the potential of becoming moot if the plan of reorganization is confirmed on that same date.

Oriental's motion to quash is couched on three meritless grounds:

a. Because LogiSYS objected the Joint Stipulation for use of cash collateral by the Debtor and extension of adequate protection, that is a "contested matter" between the parties which requires that any discovery be sought pursuant to FRBP 7030.

b. LogiSYS's request is "unspecific, unduly broad and overburdensome."

c. LogiSYS's subpoena seeks privileged, confidential or private information about third parties not related to debtor's bankruptcy case and/or Oriental's commercial relations with its vendors.

LogiSYS filed a Notice of Intent to File an Opposition to Oriental's motion on February 28, 2019.

On March 4, 2019, however, this Honorable Court entered an Order granting Oriental's Motion to Quash and limiting the scope of discovery "from Oriental Bank to the proof of claim filed by Oriental as the same is the primary basis for the stipulation of cash collateral." Dkt. # 121.

LogiSYS hereby submits its opposition to Oriental's motion to quash and requests reconsideration of this Court's limitation on discovery to be obtained from Oriental Bank contained in its Order of March 4, 2019.

## II. LEGAL ARGUMENT AND AUTHORITY

### A. This Court should reconsider its order limiting discovery to be obtained from Oriental Bank because LogiSYS's discovery is not intended to solely discover evidence relevant to the Joint Stipulation for the Use of Cash Collateral.

**Any person** other than the debtor can be compelled to attend and produce documents at the Rule 2004 examination by a subpoena issued in accordance with Rule 9016, which incorporates Rule 45 of the Federal Rules of Civil Procedure. *See* Fed. R. Bankr. P. 2004(c). Rule 2004 examinations may be conducted by any party in interest. *See In re Summit Corp.*, 891 F. 2d 1, 5 (1st Cir. 1989)

3

("Courts have generally construed the term "party in interest" as used in 11 U.S.C. §1109(b) liberally."). Therefore, given the fact that LogiSYS is one of Skytec's largest creditors, it is entitled to pursue Rule 2004 discovery more than to merely present its challenge of the extension of adequate protection to Oriental.

For example, in the context of this Court's consideration of a disclosure statement, Section 1125(b) of the Bankruptcy Code requires that such a statement contain "adequate information," which is defined to mean:

> [I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information.

11 U.S.C. § 1125(a)(1) (emphasis added).

Adequate information includes a description of the business, financial information, a description of the plan, a liquidation analysis, projection of future operations, tax consequences, and other relevant materials. *Hall v. Vance*, 887 F.2d 1041 (10th Cir. 1989); *In re A.C. Williams Co.*, 25 B.R. 173 (Bankr. N.D. Ohio 1982).

Sufficient financial information must be provided "so that a creditor (likened to a 'hypothetical reasonable investor') can make an 'informed judgment' whether to accept or reject the plan." *In re Monroe Well Service, Inc.*, 80 B.R. 324, 330 (Bankr. E.D. Pa. 1987).

In evaluating its adequacy, courts consider whether the disclosure statement contains information such as:

4

        (1) the events which led to the filing of a bankruptcy petition; (2) a description of the available assets and their value; (3) the anticipated future of the company; (4) the source of information stated in the disclosure statement; (5) a disclaimer; (6) the present condition of the debtor while in Chapter 11; (7) the scheduled claims; (8) the estimated return to creditors under a Chapter 7 liquidation; (9) the accounting method utilized to produce financial information and the name of the accountants responsible for such information; (10) the future management of the debtor; (11) the Chapter 11 plan or a summary thereof; (12) the estimated administrative expenses, including attorneys' and accountants' fees; (13) the collectibility of accounts receivable; (14) financial information, data, valuations or projections relevant to the creditors' decision to accept or reject the Chapter 11 plan; (15) information relevant to the risks posed to creditors under the plan; (16) the actual or projected realizable value from recovery of preferential or otherwise voidable transfers; (17) litigation likely to arise in a nonbankruptcy context; (18) tax attributes of the debtor; and (19) the relationship of the debtor with the affiliates. Disclosure of all factors is not necessary in every case.

*In re U.S. Brass Corp.,* 194 B.R. 420, 424-25 (Bankr. E.D. Tex. 1996).

        However, as LogiSYS will argue if allowed to make full, relevant discovery, the Debtor's Disclosure Statement in this case fails to provide adequate information to creditors and should not be approved. To be able to carry its burden to convince the Court of the merit of that argument, LogiSYS contends that it is entitled to inquire, not merely from the Debtor, but also from its only secured creditor. Limiting the scope of discovery to Oriental's proof of claim in this case makes it burdensome to LogiSYS, Debtor's most significant creditor, to meet its burden by the deadline of March 15, 2019.

        LogiSYS contends that the inquiries included in the proposed discovery are tightly focused on Oriental Bank's relationship with Debtor Skytec. LogiSYS is not attempting to seek far-reaching information on policies and procedures of general application to Oriental Bank's operations. LogiSYS's information requests are narrowly focused, targeting specific information that are needed to better understand Debtor's plan of reorganization **in addition to** the impact of the extension of the adequate protection over the claims of the unsecured creditors. Skytec has failed to identify an appropriate basis on which to deny LogiSYS's

5

requests. Notably, with a complete understanding of Debtor's financial condition, LogiSYS will be able to fully assess the disclosure statement, the reorganization plan **and** the extension of adequate protection proposal.

### B. Oriental has not met any of Rule 45's requirements for quashing a subpoena

The quashing of subpoenas is governed by Rule 45 (d) of the Federal Rules of Civil Procedure, which states in its relevant part as follows:

> (3) *Quashing or Modifying a Subpoena.*
>   (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
>     (i) fails to allow a reasonable time to comply;
>     (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
>     (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
>     (iv) subjects a person to undue burden.
>   (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
>     (i) disclosing a trade secret or other confidential research, development, or commercial information; or
> (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

Rule 45(d)(3) provides the exclusive mechanism in the rules to quash a non-party's subpoena. *See Continental Coatings Corp. v. Metco, Inc.* 50 F.R.D. 382, 384 (N.D. Ill. 1970) (holding other rules inapplicable when Rule 45 is exclusive mechanism for non-party subpoenas).

Oriental contends that the subpoena should be quashed under Rule 45(d)(3) because:

a) was notified pursuant to Rule 2004, instead of under Rule 7030, because it entails a contested matter, but fails to assert why the courts establish the difference between the rules.

Both, the notice under Bankr. Rule 2004 Examination and the notice of Deposition under Rule 7030 follow the same process under Bankr. Rule 9016 (Fed. Rule Civ. P. 45). The main difference between the two rules is found in Rule 7030(c), as the parties are allowed to cross-examine the deponent as they would at trial, and to present objections to be noted on the record. Even though the subpoena was notified under Rule 2004,

6

Logistic requested permission from the Court and complied with the procedural safeguards required under Bankr. Rule 9016, the same safeguards needed to be given under a notice of deposition pursuant Bankr. Rule 7030. The effect of the notice that was followed is not adverse to the person to be examined or the debtor, but to the movant's use of the information obtained through each type of discovery process. In addition, a review of the subpoena served upon Oriental Bank reveals that <u>the matters to be questioned are oriented to the cause of Debtor's alleged financial collapse or insolvency.</u>

As debtor's main lender, having extended several refinancing agreements in the past decade, Oriental Bank has sufficiently specific background financial information to allow creditors to discover any business transactions between the Debtor and its insiders, and how the loan agreements benefited the debtor or its insiders over the Debtor's financial position.

A subpoena *must* be modified or quashed under Rule 45(c)(3)(A) **only** when it: (i) fails to allow reasonable time for compliance; (iii) requires the disclosure of privileged information; or (iv) subjects the witness to "undue burden." *See* Fed. R. Civ. P. 45(c)(3)(A)(i), (iii) & (iv). The subpoena for a 2004 Rule Examination issued to Oriental Bank does not require modification or quash under Rule 45(d)(3)(A) because: (1) it provides adequate time for compliance since it was issued with the required 14 days' notice; (2) Oriental Bank's officer will not testify regarding privileged information; and (3) Oriental Bank does not allege that it will bear any "substantial burden." Finally, even if some of the information is known to both Debtor and Oriental Bank, given Skytec's track record in litigation, there is no assurance or guarantee that it will provide the information, even when subject to a court order. *See id.* In fact, Skytec's response to the subpoena directed to its officers was that the request for the production of documents related to prior financing agreements was overly burdensome and beyond the scope of discovery. Therefore, information from Oriental should serve to clarify whether the amounts owed to Oriental were in fact related to Skytec or whether prior refinancing was intended to benefit its insiders.

Courts have established that the "legitimate goals of the Rule 2004 examinations include discovering assets, examining transactions, and determining whether wrongdoing has occurred." Potential examinees include third parties that possess knowledge of the debtor's acts, conduct, liabilities or financial condition which relate to the administration of the bankruptcy estate." See *In re E. W. Resort Dev. V, L.P., L.L.L.P.*, 2014 Bankr. LEXIS 3930, 2014 WL 4537500, at *7 (Bankr. D. Del. Sept. 12, 2014), *In re Millenium Lab Holding III, LLC*, 562 B.R. 614 (Bankr. D. Mass. 2016).

A subpoena *may* be modified or quashed under Rule 45(d)(3)(B) when it: (i) requires the disclosure of trade secrets; (ii) requires disclosure of an unretained expert's opinion or conclusions; or (iii) requires a "substantial expense" due to travel. *See* Fed. R. Civ. P. 45(c)(3)(B)(i)-(iii). The subpoena at issue is not one that requires quashing under Rule 45(d)(3)(B) because: (1) it does not require the disclosure of confidential information in open court since there are procedures in place to protect such an occurrence; (2) Oriental Bank's designated officer is not an unretained expert; and (3) Oriental will not incur a "substantial expense" since it already has a designated officer acquainted with the account, who signed the Proof of Claim and attended the meeting of creditors held. In addition, LogiSYS complied and tendered the subpoena expenses.

Therefore, Oriental failed to allege sufficient facts in its memorandum to satisfy Rule 45(d)(3) standard. LogiSYS already proffered in its original motion that good cause exists to further investigate the intricacies of debtor's management of its business not only with Oriental Bank, but in its ordinary course of business endeavors. *See*, Dkt # 108.

b) because it is unspecific, unduly broad and overburdensome upon Oriental Bank

In general, in order to establish that good cause exists for a Rule 2004 examination, the party requesting the examination need only demonstrate that an examination is reasonably necessary to protect its legitimate interests. *In re Hammond*, 140 B. R. 197 (S.D. Ohio 1992) (reversal of order denying request for

8

Rule 2004 examination where bankruptcy court required that requesting party establish "extraordinary circumstances" justifying examination). [1]

Debtor argues that LogiSYS's "Request(s) for Production of Documents No. 3, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, and 15 (are) unduly broad and overly burdensome as it encompasses a more than a decade worth of materials…" The ten-year period requested is nothing more than what Oriental is obligated to preserve in its records for active accounts. LogiSYS has the right to investigate how the Debtor described the debts it owed, the amounts, the debts it paid off with the proceeds of the refinancing deals, and the use of any additional proceeds of the several refinancing deals provided by Oriental Bank. Those business deals directly impacted Skytec's decisions before it filed its petition and its long-term decisions in the management of the estate. Also, since additional guarantees have been given as collateral to the loan (and some apparently withdrawn), only the bank can explain how those guarantees affected Debtor's financial obligation under the loan agreement, and the discussions and the proffers made by Debtor's officials regarding the corporation's financial stability or alleged recent insolvency. As a creditor, LogiSYS is entitled to know how, if at all, such business deals benefited Debtor's insiders to the detriment of Debtor's and its creditors' interests.

Here, Oriental Bank claims that LogiSYS's request for production of documents is intrusive or overly broad because it refers to "persons" involved. Notably, in the context of the subpoena, references were made to "persons" relationship with the bank <u>and</u> debtor's financial obligations. Following *In re Countrywide Loans*, 384 B.R. 373 (Bankr. W.D. Pa. 2008), the court in *In re Youk-See*, 450 B.R. 312 (Bankr. D. Mass. 2011), denied a financial institution's motion to quash the subpoena, finding that the discovery requests were tailored to the procedures of the loan modifications "relative to the Debtor and the Property." The court also ruled that they were neither intrusive or abusive.

---

[1] "If the requesting party can make this showing, the examinee cannot avoid the examination merely by arguing that the examination is unduly burdensome or costly. Rather, if the examination is potentially burdensome, the court should limit the scope of the examination." Busenkell, M. and Horan, T., *Gone Fishing: The Fundamentals of Rule 2004*, Amer.Bkrpctc.Inst. Journal 46, 47 (February 2010).

  c)The subpoena seeks privileged, confidential or private information about Oriental Bank.

 Oriental failed to assert any applicable statute or rule that may support its concern about disclosing privileged, confidential or private information. Considering Oriental's claim of confidential information, it also fails to assert how third parties who are not related to Debtor's bankruptcy case, besides Debtor's insiders, will be affected by the disclosure of the information sought in the subpoena which is specifically addressed to obtain information related to Debtor's financial deals with Oriental Bank. Even if the information maintained by the bank related to debtor's deals may involve third parties, that information will undoubtedly be related to debtor's liabilities, obligations and to the assets of the estate.

 Oriental cites *In re Johns-Manville Corp.*, 42 B.R. 362, 364 (S.D.N.Y. 1984), to support its argument that it is improper to use Rule 2004 to examine witness as to matters having no relationship to debtor's affairs, or no effect on the administration of Debtor's estate. However, in *Mansville,* the court also emphasized that creditors and third parties may be examined to inquire on the condition and whereabouts of the property of the bankruptcy estate. *See id. (citing Cameron* v. *United States*, 231 U.S. 710 (1914))*.* In addition, the *Mansville* court pointed out that "[t]he examination of witnesses having knowledge of the debtor's acts, conduct, liabilities, assets, etc. is therefore proper, and the inquiry may cut a broad swath through the debtor's affairs, those associated with him, and those who might had business dealings with him." *Id.* (citations in footnotes omitted).

 By the same token, while Oriental cites *In re GHR Energy Corp.*, 35 B.R. 534 (Bankr. D. Mass. 1983) to argue that the examination under Rule 2004 can only be had on persons possessing knowledge of debtor's affairs, the Court there also indicated that "[t]he object of the examination (under Rule 2004) of the bankrupt <u>and of other witnesses</u> to show the condition of the estate is to enable the court to discover the extent and whereabouts, and to come into possession of it, that the

10

rights of creditors may be preserved." *Id*., at 536-37 (*citing Cameron v. United States,* 231 U.S. 710 (1914)).

LogiSYS's burden of proving good cause for the proposed discovery has been met following the test formulated in *In re Countrywide Home Loans, Inc*., 384 B.R. 373 (Bankr. W.D. Pa. 2008). In *Countrywide*, the Court noted that bankruptcy courts have established that the good cause standard is a "sliding scale" or balancing test.[2] The level of good cause to obtain certain documents or pursue certain line of inquiry involving a creditor will vary depending on the potential intrusiveness involved. *See In re Fearn, 96 B.R. 135, 138* (Bankr. S.D. Ohio 1989) (scope of Rule 2004 examination should not be so broad as to be more disruptive and costlier to the party to be examined than beneficial to the party seeking discovery); *In re Express One International, Inc.*, 217 B.R. 215, 217 (Bankr. E.D. Tex.1998) (same); *In re Eagle-Picher Industries. Inc*., 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994) (same); *In re Texaco, Inc.,* 79 B.R. 551, 556 (Bankr.S.D.N.Y.1987) (same). *See also In re Hammond,* 140 B.R. 197, 201 (S.D. Ohio 1992).

In *In re Countrywide Home Loans, Inc*., 384 B.R., at 393, the Court concluded that inquiries that are tightly focused on the creditor's relationship with a particular debtor will require a relatively low level of good cause because they represent low level of intrusion into the creditor's business affairs and a low risk of abuse. On the other hand, inquiries that seek far-reaching information on policies and procedures of general application in the creditor's operation will require a correspondingly higher showing of good cause because are inherently intrusive. *See In re Youk-See, 450 B.R. 312, 319-20 (Bankr. D. Mass. 2011).*

---

[2] "Rather, a totality of circumstances approach is required, taking into account all relevant factors. Consistent with this approach it is appropriate to apply the "good cause" standard in what may be termed a "sliding scale" manner or balancing test. This is to say, the level of food cause required to be established by the [U.S. Trustee] before she can obtain certain documents or pursue a certain line of inquiry in a Rule 2004 examination involving a creditor will vary depending on the potential intrusiveness involved." *In re Countrywide Home Loans, Inc*., 384 B.R. 373, 393-94 (Bankr. W.D. Pa. 2008).

11

WHEREFORE, it is respectfully requested from this Honorable Court that it RECONSIDER its Order limiting the scope of discovery to be had from Oriental to only matters related to its proof of claim and DENY Oriental Bank's Motion to Quash end enforce the subpoena issued to it by LogiSYS.

RESPECTFULLY SUBMITTED.

WE HEREBY CERTIFY that on this same date we electronically filed the foregoing document with the Clerk using CM/ECF system, which will send notification of such filing to Debtor(s) attorney, the US Trustee and to all CM/ECF participants.

In San Juan, Puerto Rico, on March 4, 2019.

**GOLDMAN ANTONETTI & CÓRDOVA, LLC.**
ATTORNEYS FOR CREDITOR, LOGISTIC SYSTEMS, INC.
American International Plaza, Fifthteen Floor
250 Muñoz Rivera Avenue
San Juan, PR 00918
Tel: (787) 759-4117; Fax: (787) 767-9177

*/s/ Carlos A. Rodríguez Vidal*
Carlos A. Rodríguez Vidal
USDC-PR #201213
e-mail: crodriguez-vidal@gaclaw.com

*/s/ Solymar Castillo Morales*
Solymar Castillo Morales
USDC-PR #218310
e-mail: scastillo@gaclaw.com