## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF PUERTO RICO

IN RE:

SKYTEC, INC.

        **DEBTOR**

CASE NO. 18-05288(ESL)
CHAPTER 11

*ORIENTAL BANK'S PROPOSED FINDINGS OF FACTS AND CONCLUSIONS OF LAW FOR HEARING ON CONTESTED MATTER REGARDING THE LOGISITIC SYSTEM, INC'S "OPPOSITION TO JOINT STIPULATION FOR THE INTERIM USE OF CASH COLLATERAL AND ADEQUATE PROTECTION"*

TO THE HONORABLE COURT:

Comes now, secured creditor **ORIENTAL BANK (Oriental),** through its undersigned counsel and respectfully submits its proposed Findings of Facts and Conclusions of Law for the hearing on the contested matter regarding Logistic System, Inc's ("Logistic") "Opposition to Joint Stipulation for the Interim Use of Cash Collateral and Adequate Protection" schedule for March 26, 2019 (the "Hearing").

## I.   PROPOSED FINDINGS OF FACTS

### a.   Debtor's pre-petition indebtedness to Oriental Bank

1.      Prior to the Petition Date, the Debtor entered into a loan agreement with Oriental, pursuant to which Oriental restructured certain credit facility previously granted to the Debtor (the "Loan"). *See, Claim no. 5 at the Claims Register*

   *of Case No.  18-05288(ESL), pages 5-30.*

2.      The Loan is evidenced by the loan documents (collectively, the "Loan Documents") detailed in and attached to Oriental's Proof of Claim no. 5 (the "POC"). *See, Claim no. 5 at the Claims Register of Case No.  18-05288(ESL), pages 5-30.*

3.      The Loan is secured by, among other things, a duly perfected and enforceable first-rank security interest over the following properties belonging to the Debtor:

    a.      All accounts receivable of the Debtor and all profits, proceeds, products and benefits of the same (collectively, the "Accounts Receivable");

    b.      All rights, claims and benefits of the Debtor against any Person arising out of or in relation to the property described in subsection (a) mentioned above;

    c.      All benefits, proceeds, rents or products of the Accounts (including any product, proceeds, rent or benefit in cash) and any product of such property, including, but not limited to, payments, collections, or any sale, exchange, or other type of disposal of the Collateral and any financial asset, good or instrument acquired with all or part of the product, proceeds, rent or benefit of the Collateral; and

    d.      All inventory of the Debtor, including, but not limited to the inventory the Debtor uses for the sale or otherwise, including all supplies, work in progress, finalized goods and materials used or consumed in the operation of the Debtor's business together and replacements and all additions or appurtenances thereto (collectively, the "Inventory").

*See, UCC Report attached to Claim no. 5 at the Claims Register of Case No. 18-05288(ESL), pages 31-39. See also, Financing Statements no. 2013001732, 2015007186 and 20180000244 filed at the Registry of Commercial Transactions of the Department of State of the Commonwealth of Puerto Rico.*

4.      Oriental's security interest in the Inventory and Accounts Collateral was perfected by filing various Financing Statements at the Registry of Commercial Transactions of the Department of State of the Commonwealth of Puerto Rico.  *See, UCC Report attached to Claim no. 5 at the Claims Register of Case No.  18-05288(ESL), pages 31-39. See also, Financing Statements no. 2013001732, 2015007186 and 20180000244 filed at the Registry of Commercial Transactions of the Department of State of the Commonwealth of Puerto Rico.*

5.      As part of the Loan Documents and Collateral for the Loan, the Debtor granted to Oriental a lien over its cash collateral; specifically, the income generated by the Debtor from the Accounts Receivables and Inventory, and related proceeds, products, rents, substitutions, replacements, benefits, additions and/or appurtenances. *See, UCC Report attached to Claim no. 5 at the Claims Register of Case No.  18-05288(ESL), pages 31-39. See also, Financing Statements no. 2013001732, 2015007186 and 20180000244 filed at the Registry of Commercial Transactions of the Department of State of the Commonwealth of Puerto Rico.*

**b.  <u>Procedural Background:</u>**

6.      The Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code (the "Code") on September 12, 2018 (the "Petition Date"). *See, Docket Entry no. 1 of Bankruptcy Case no. 18-05288(ESL).*

7.      On Amended Schedule D, Oriental Bank was listed as a secured creditor in the amount of $2,008,335.59. Furthermore, Debtor listed the value of the collateral that

supports Oriental's claim at $2,177,454.00. *See, Docket Entry no. 89-1 of Bankruptcy Case no. 18-05288(ESL), page 11.*

8.    On Amended Schedule E/F, Logistic System, Inc. was listed as an unsecured creditor in the amount of $3,711,945.00, and the claim was scheduled as contingent, unliquidated and disputed. *See, Docket Entry no. 89-1 of Bankruptcy Case no. 18-05288(ESL), page 16.*

9.    On October 18, 2018, Oriental Bank filed a secured claim in the amount of $2,026,902.06 and regarding a Commercial Term Loan. In such claim, Oriental claimed pre-petition arrears in the amount of $2,557.28. *See, Claim no. 5 at the Claims Register of Case No.  18-05288(ESL).*

10.    As of this date, neither the Debtor or any other party in interest has filed an objection to Oriental's secured Claim no 5. *See, Claim no. 5 at the Claims Register of Case No.  18-05288(ESL).*

11.    On November 13, 2018, the Court issued an Order modifying the automatic stay provisions of Section 362(a) in favor of Logistic for the limited purpose of allowing the action before the U.S. District Court to continue up to the point of judgment. Furthermore, the court stated that the judgment shall be processed and channeled through the bankruptcy case. *See, Docket Entry no. 56 of Bankruptcy Case no. 18-05288(ESL).*

12.    On November 27, 2018, Debtor and Oriental filed a "Stipulation for Interim Use of Cash Collateral and Adequate Protection" (the "Stipulation"). According to the Stipulation, Debtor and Oriental agreed to a monthly adequate protection payment in the amount of $12,786.49 and the granting of replacement liens and post-petition security interest on all the assets and collateral acquired by Debtor on or after the petition date.

Furthermore, the Stipulation provided additional adequate protection to Oriental Bank. *See, Docket Entry no. 56 of Bankruptcy Case no. 18-05288(ESL).*

13.    On December 4, 2018, Logistic System Inc. ("Logistic") filed an "Objection to Joint Stipulation for the Interim Use of Cash Collateral and Adequate Protection" ("Logistic's Objection"). *See, Docket Entry no. 71 of Bankruptcy Case no. 18-05288(ESL).*

14.    On December 24, 2018, Oriental filed its Reply to Logistic's Objection to Stipulation. *See, Docket Entry no. 76 of Bankruptcy Case no. 18-05288(ESL).*

15.    On January 3, 2019, the Honorable Court entered an order setting a hearing for March 26, 2019, on the contested matter initiated by Logistic's Objection and approving the Stipulation for the interim use of cash collateral between Debtor and Oriental up to the date on which the merits of the objection filed by Logistic will be considered, particularly as to how unsecured creditors are adversely affected by the Stipulation. *See, Docket Entry no. 76 of Bankruptcy Case no. 18-05288(ESL).*

### c.    Logistic's Claim and Objection to the Stipulation

16.    On Amended Schedule E/F, Logistic System, Inc. was listed as an unsecured creditor in the amount of $3,711,945.00, and the claim was scheduled as contingent, unliquidated and disputed. *See, Docket Entry no. 89-1 of Bankruptcy Case no. 18-05288(ESL), page 16.*

17.    On January 15, 2019, Logistic filed an unsecured claim in the amount of $5,167,601.86. *See, Claim no. 9 at the Claims Register of Case No. 18-05288(ESL).*

18.    Logisitic has not claimed any security interest over Debtor's cash collateral. *See, Claim no. 9 at the Claims Register of Case No. 18-05288(ESL).*

19.     On its Objection to the Stipulation, Logistic stated that it has no objection to Oriental being provided with monthly payments in the amount provided by the underlying Loan Documents ($12,786.49) and with the right to require cash collateral be deposited into a segregated account, but objects to the other concessions proposed by Debtor in the Stipulation. *See, Docket Entry no. 71 of Bankruptcy Case no. 18-05288(ESL). page 17.*

20.     Besides Logistic, no other creditor or party in interest has filed an Objection to the Stipulation. *See, Docket Report of Bankruptcy Case no. 18-05288(ESL), page 2.*

### d.     **Debtor's use of Cash Collateral**

21.     Debtor acknowledged that in order to continue its operations, Debtor needed Oriental's consent to use its cash collateral. *See, Docket Entry no. 77 of Bankruptcy Case no. 18-05288(ESL), page 2.*

22.     Debtor acknowledged that without the use of the cash collateral Debtor would have had to shut down since it does not have another form of financing. *See, Docket Entry no. 77 of Bankruptcy Case no. 18-05288(ESL), page 2.*

23.     Debtor acknowledged that the replacement liens and other protections granted to Oriental are typical, particularly for a case that does not have real estate collateral. *See, Docket Entry no. 77 of Bankruptcy Case no. 18-05288(ESL), page 2.*

24.     The Stipulation for the interim use of cash collateral, **does not** contain any clause entitling Oriental to automatically obtain relief from the automatic stay upon Debtor's default under the Stipulation, nor allowing Oriental to foreclose on its collateral

Oriental Bank's Proposed Findings of Facts and
Conclusions of Law
Case No. 18-05288(ESL)
Page 7 of 21

without first obtaining a court order.  *See, Docket Entry no. 67 of Bankruptcy Case no. 18-05288(ESL).*

### d.   Debtor's Monthly Operating Reports ("MOR")

25.     On Schedule A/B, Debtor listed its accounts receivables at $1,650,228.00. *See, Docket Entry no. 29 of Bankruptcy Case no. 18-05288(ESL), page 4, line 12.*

26.     On Schedule A/B, Debtor listed its inventory at $486,874.00. *See, Docket Entry no. 29 of Bankruptcy Case no. 18-05288(ESL), page 3, line 23.*

27.     On Schedule A/B, Debtor listed its cash or cash equivalents owned or controlled by the Debtor at $433,622.00. *See, Docket Entry no. 29 of Bankruptcy Case no. 18-05288(ESL), page 2, line 5.*

28.     On the MOR for the period of September 12, 2018 to September 30, 2018, Debtor listed its accounts receivables at $1,426,793.00. *See, Docket Entry no. 63 of Bankruptcy Case no. 18-05288(ESL), page 3, line 25.*

29.     On the MOR for the period of October 1, 2018 to October 31, 2018, Debtor listed the inventory balance at the beginning of the month, which correspond to the inventory balance as the end of the month of September 2018 at $471,601.12. *See, Docket Entry no. 66 of Bankruptcy Case no. 18-05288(ESL), page 7.*

30.     On the MOR for the period of September 12, 2018 to September 30, 2018, Debtor listed its ending cash balance at $879,915.00. *See, Docket Entry no. 63 of Bankruptcy Case no. 18-05288(ESL), page 2, line 23.*

31.     On the MOR for the period of October 1, 2018 to October 31, 2018, Debtor listed its end of the month balance of accounts receivables at $1,173,811.38. *See, Docket Entry no. 66 of Bankruptcy Case no. 18-05288(ESL), page 4.*

32.     On the MOR for the period of October 1, 2018 to October 31, 2018, Debtor listed its end of the month balance of inventory at $558,197.01. *See, Docket Entry no. 66 of Bankruptcy Case no. 18-05288(ESL), page 7.*

33.     On the MOR for the period of October 1, 2018 to October 31, 2018, Debtor listed its ending cash balance at $919,723.81. *See, Docket Entry no. 66 of Bankruptcy Case no. 18-05288(ESL), page 2, line 7.*

34.     On the MOR for the period of November 1, 2018 to November 30, 2018, Debtor listed its end of the month balance of accounts receivables at $1,153,689.85. *See, Docket Entry no. 77 of Bankruptcy Case no. 18-05288(ESL), page 4.*

35.     On the MOR for the period of November 1, 2018 to November 30, 2018, Debtor listed its end of the month balance of inventory at $524,526.77. *See, Docket Entry no. 77 of Bankruptcy Case no. 18-05288(ESL), page 7.*

36.     On the MOR for the period of November 1, 2018 to November 30, 2018, Debtor listed its ending cash balance at $750,924.46. *See, Docket Entry no. 77 of Bankruptcy Case no. 18-05288(ESL), page 2, line 7.*

37.     On the MOR for the period of December 1, 2018 to December 31, 2018, Debtor listed its end of the month balance of accounts receivables at $1,147,079.31. *See, Docket Entry no. 107 of Bankruptcy Case no. 18-05288(ESL), page 4.*

38.     On the MOR for the period of December 1, 2018 to December 31, 2018, Debtor listed its end of the month balance of inventory at $569,055.77. *See, Docket Entry no. 107 of Bankruptcy Case no. 18-05288(ESL), page 7.*

Oriental Bank's Proposed Findings of Facts and
Conclusions of Law
Case No. 18-05288(ESL)
Page 9 of 21

39.     On the MOR for the period of December 1, 2018 to December 31, 2018, Debtor listed its ending cash balance at $1,206,254.29. *See, Docket Entry no. 107 of Bankruptcy Case no. 18-05288(ESL), page 2, line 7.*

40.     On the MOR for the period of January 1, 2019 to January 30, 2019, Debtor listed its end of the month balance of accounts receivables at $1,239,389.11. *See, Docket Entry no. 113 of Bankruptcy Case no. 18-05288(ESL), page 4.*

41.     On the MOR for the period of January 1, 2019 to January 30, 2019, Debtor listed its end of the month balance of inventory at $519,957.30. *See, Docket Entry no. 113 of Bankruptcy Case no. 18-05288(ESL), page 7.*

42.     On the MOR for the period of January 1, 2019 to January 30, 2019, Debtor listed its ending cash balance at $707,409.16. *See, Docket Entry no. 113 of Bankruptcy Case no. 18-05288(ESL), page 2, line 7.*

43.     On the MOR for the period of February 1, 2019 to February 28, 2019, Debtor listed its end of the month balance of accounts receivables at $1,379,252.66. *See, Docket Entry no. 134 of Bankruptcy Case no. 18-05288(ESL), page 4.*

44.     On the MOR for the period of February 1, 2019 to February 28, 2019, Debtor listed its end of the month balance of inventory at $519,292.08. *See, Docket Entry no. 134 of Bankruptcy Case no. 18-05288(ESL), page 7.*

45.     On the MOR for the period of February 1, 2019 to February 28, 2019, Debtor listed its ending cash balance at $550,595.92. *See, Docket Entry no. 134 of Bankruptcy Case no. 18-05288(ESL), page 2, line 7.*

46.     In summary, the Debtor's Monthly Operating Reports show the following

information:

| | Accounts Receivables | Inventory | Cash at end of the Month | Total |
|---|---|---|---|---|
| Date of the Petition (Docket no. 29) | $1,650,228.00 | $486,874.00 | $433,622.00 | $2,570,724.00 |
| MOR September 2018 (Docket no. 63) | $1,426,793.00 | $471,601.12 | $879,915.00 | $2,778,309.12 |
| MOR October 2018 (Docket no. 66) | $1,173,811.38 | $558,197.01 | $919,723.81 | $2,651.732.20 |
| MOR November 2018 (Docket no. 75) | $1,153,689.85 | $524,526.77 | $750,924.46 | $2,429,141.08 |
| MOR December 2018 (Docket no. 107) | $1,147,079.31 | $569,055.77 | $1,206,254.29 | $2,922,389.37 |
| MOR January 2019 (Docket no. 113) | $1,239,389.11 | $519,957.30 | $707,409.16 | $2,466,755.57 |
| MOR February 2019 (Docket no. 134) | $1,379,252.66 | $519,292.08 | $550,595.92 | $2,449,140.66 |

*See, Docket Entries no. 29, 63,66,75,107,113 and 134 of Bankruptcy Case no. 18-
05288(ESL).*

47.     Debtor's Monthly Operating Reports shows that since the filing of the

petition and until February 28, 2019, Debtor's accounts receivable have been reduced from

$1,650,228.00 to $1,379,252.66 *See, Docket Entries no. 29 and 134 of Bankruptcy Case

no. 18-05288(ESL).*

48.     Debtor's Monthly Operating Reports shows that since the filing of the

petition and until February 28, 2019, Debtor's accounts receivables, plus inventory, plus

cash at the end of the month has been reduced from $2,570,724.00 to $2,449,140.66. *See,

Docket Entries no. 29 and 134 of Bankruptcy Case no. 18-05288(ESL).*

49.    Debtor's Monthly Operating Reports shows that during the pendency of the
bankruptcy case, Oriental's collateral has decrease. *See, Docket Entries no. 29 and 134 of
Bankruptcy Case no. 18-05288(ESL).*

## II.    CONCLUSIONS OF LAW

### a. Pursuant to Section 363(e) of the Bankruptcy Code, Debtor's use of Oriental's Cash Collateral entitles Oriental to receive adequate protection.

Due to the effect of the automatic stay, creditors are entitled to adequate protection
of their secured claims during a bankruptcy case. Adequate protection means that the value
of the creditor's interest in the collateral must be protected from diminution while the
property is being used or retained in the bankruptcy case. *United Savings Ass'n of Texas v.
Timbers of Inwood Forest Assoc., Ltd.,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740
(1988). The concept is derived from the Fifth Amendment's protection of property interest.
*See Wright v. Union Central Life Ins. Co.,* 311 U.S. 273, 61 S.Ct. 196, 85 L.Ed. 184 (1940);
*Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593
(1935).

A debtor-in-possession may not use cash collateral unless the secured creditor
consents or the court authorizes the use of the cash collateral. 11 U.S.C. § 363(c)(2). On
request of a party with an interest in cash collateral, the court must prohibit or condition a
debtor's use of cash collateral "as is necessary to provide adequate protection of such
interest." 11 U.S.C. § 363(e). Adequate protection may be cash payments, replacement
liens, or relief that "will result in the realization by such entity of the indubitable
equivalent." 11 U.S.C. § 361.

The Bankruptcy Code does not define adequate protection. Instead, 11 U.S.C. §361
provides a list of nonexclusive examples. These include lump sum cash payments, periodic

cash payments and additional or replacement liens. Under § 361(3) courts may fashion other forms of adequate protection based upon equitable considerations arising from the particular facts in each case. *Bramham v. Nevada First Thrift (In re Bramham),* 38 B.R. 459, 466 (Bankr.D.Nev.1984).

Clearly, however, the primary purpose of 11 U.S.C. §361 is to insulate the interest of a secured creditor in a debtor's property from diminution of value resulting from the delay in enforcing its rights occasioned by a debtor's need for time to work out its problems and reorganize its business under the protection of the automatic stay prescribed by 11 U.S.C. s 362. Thus, the purpose of adequate protection is not to protect the secured creditor from loss per se, but to maintain the status quo and prevent any additional loss due to delay after a debtor files its petition in this Court. *See, In re Alyucan Interstate Corp., 12 B.R. 803, 808-809 (Bkrtcy.D.Utah 1981), cited in  Matter of Karl A. Neise, Inc., 16 B.R. 600, 601 (Bankr. S.D. Fla. 1981).*

In order to encourage reorganization, the courts must be flexible in applying the adequate protection standard. This flexibility, however, must not operate to the detriment of the secured creditor's interest. In any given case, the bankruptcy court must necessarily (1) establish the value of the secured creditor's interest, (2) identify the risks to the secured creditor's value resulting from the debtor's request for use of cash collateral, and (3) determine whether the debtor's adequate protection proposal protects value as nearly as possible against risks to that value consistent with the concept of indubitable equivalence. *Martin v. United States (In re Martin),* 761 F.2d 472, 476–77 (8th Cir. 1985).

Whenever a bankruptcy trustee or a debtor-in-possession proposes to use property of the bankruptcy estate in which a creditor has an interest, and the creditor requests

adequate protection, the court shall condition or prohibit the use of the property to the extent that the creditor is adequately protected. *Martin v. Commodity Credit Corp. (In re Martin),* 761 F.2d 472, 475 (8th Cir.1985). " 'Adequate protection' is mandated by certain provisions of the Code when requested by an entity with an interest in property in which the estate has an interest. When an entity is stayed from enforcing its interest, when the estate proposes to use, sell or lease property in which the entity has an interest, and when property on which the entity has a lien is to be used as collateral for a loan, the entity is entitled to adequate protection as a matter of right." 3 *Collier on Bankruptcy,* ¶ 361.02 (Lawrence P. King et al. Eds., 15th ed. rev. 1979 & Supp.1999).

However, adequate protection is not available to the unsecured creditor. 1 David G. Epstein et al., *Bankruptcy* § 3–27 (1992) *citing In re Tellier,* 125 B.R. 348, 349 (Bankr.D.R.I.1991). The purpose of adequate protection is to ensure that a secured creditor receives the benefit of its bargain. *In re Martin,* 761 F.2d at 476 (*citing* S.Rep. No. 989, 95th Cong., 2d Sess. 53, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5839; H.R.Rep. No. 595, 95th Cong., 2d Sess. 339, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5963, 6295); *Unsecured Creditors' Committee v. Jones Truck Lines, Inc.,* 156 B.R. 608, 610 (W.D.Ark.1992). *In re Access, Inc.,* No. BKR. 99-04498-CH, 2000 WL 35798996, at *3 (Bankr. S.D. Iowa Mar. 27, 2000)

Since it is almost certain that this case will probably turn into a highly litigated case, it does no violence to the concept of the Bankruptcy Code to require the Debtor to furnish adequate protection to Oriental as a secured creditor. On the contrary such an approach furthers the statutory schemes of Section 361 of the Bankruptcy Code by

protecting the rights of the secured creditor while complex reorganization issues are

concluded. *See, In re Born,* 10 B.R. 43 (Bankr. S.D. Tex. 1981).

> **b.**    **Alleged equity cushion as of the filing of the petition, is not sufficient to provide Oriental with adequate protection.**

Logistic is urging the Court to exclude post-petition proceeds from pre-petition

collateral on equitable grounds. Logistic's main argument is premised on the allegation

that Oriental is oversecured with a purported 5% equity cushion.  Even if such allegation

is correct, it seems that a 5% cushion typically is not taken to constitute adequate

protection. *See Kost v. First Interstate Bank of Greybull,* 102 B.R. 829, 831–32

(D.Wyo.1989) (collecting cases; equity cushion of 20% or more generally held adequate

while cushion of less than 11% generally held insufficient). *See, e.g., In re Jug End in the

Berkshires, Inc.,* 46 B.R. 892, 899–900 (Bankr.D.Mass.1985) (8.3% insufficient); *In re

LeMay,* 18 B.R. 659, 660–61 (Bankr.D.Mass.1982) (7% is inadequate); *see also In re

Rogers Dev. Corp.,* 2 B.R. 679, 685 (Bankr.E.D.Va.1980) (15% to 20% equity cushion

held to be sufficient to provide adequate protection to a creditor even though the debtors

had no equity in the property); *In re Schaller,* 27 B.R. 959, 961–62 (W.D.Wis.1983) (17%

to 18% cushion held not to offer adequate protection where cushion was being rapidly

eroded by the daily accrual of interest on the debt); *In re McGowan,* 6 B.R. 241, 243

(Bankr.E.D.Pa.1980) (holding a 10% cushion sufficient as adequate protection where

monthly payments were proposed to cover interest accruing on the claim); *In re Pitts,* 2

B.R. 476, 478 (Bankr.C.D.Cal.1979) (holding a 15% cushion to be "minimal"). Cases cited

in *Bank Rhode Island v. Pawtuxet Valley Prescription & Surgical Ctr., Inc.,* 386 B.R. 1, 5

(D.R.I. 2008).

Oriental Bank's Proposed Findings of Facts and
Conclusions of Law
Case No. 18-05288(ESL)
Page 15 of 21

### c. Unsecured Creditors are not adversely affected by the Stipulation.

Pursuant to the terms of the Stipulation, unsecured creditors are not being adversely affected. First, The Stipulation **does not** contain any clause entitling Oriental to automatically obtain relief from the automatic stay upon Debtor's default under the Stipulation or the Loan Agreement. Thus, for Oriental to enforce or foreclose any of its liens, including the replacement liens granted under the Stipulation, Oriental must first request the relief from stay under Section 362 of the Bankruptcy Code and prove to the Bankruptcy Court that the collateral has diminished in value and/or there is no equity in the property and/or that it lacks of adequate protection. *See, Qmect, Inc. v. Burlingame Capital Partners II, L.P.,* 373 B.R. 682, 690 (N.D. Cal. 2007) (Bankruptcy courts have held that lenders are not entitled to foreclose on replacement liens absent proof that collateral has diminished in value as a result of the automatic stay or the collateral's use during the pendency of a bankruptcy petition.) *In re Sun Valley Ranches, Inc.,* 38 B.R. 595, 598 (Br. *Id.* 1984). Thus, Oriental submits that the rights of the unsecured creditors are preserved during the pre-confirmation period by requiring Oriental to demonstrate the diminution of its collateral before being allowed to foreclose or enforce its liens, including its replacement liens afforded through the Stipulation.

### d. Oriental's Right to Credit Bid and Receive Net Proceeds Upon a Sale

Logistic argues that Oriental will improve its position if the Stipulation is approved because: (a) it will be allowed to credit bid on any assets; and (2) will be paid all net proceeds from any sale of its collateral without further order of the Court. Logistic assertion is incorrect.

In one hand, Section 363(k) permits a secured creditor to bid its claim at a sale out

of the ordinary course and free and clear of liens. 11 U.S.C.A. §363(k).  The Supreme Court

has made clear that an estate representative may not sell property free and clear of liens

without allowing a secured creditor an opportunity to exercise its credit bidding rights, both

in the context of a § 363 sale and in a sale under a plan of reorganization.  *See, RadLAX*

*Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 132 S. Ct. 2065, 2070 n.2 (2012)

("The ability to credit-bid helps to protect a creditor against the risk that its collateral will

be sold at a depressed price [ ]" by enabling the secured "creditor to purchase the collateral

for what it considers the fair market price (up to the amount of its security interest) without

committing additional cash to protect the loan"); *In re Philadelphia Newspapers*, LLC, 599

F.3d 298, 332–33, 52 Bankr. Ct. Dec. (CRR) 255, Bankr. L. Rep. (CCH) P 81719 (3d Cir.

2010) (Ambro, J., dissenting) ("Indeed, while many of the valuation mechanisms (such as

judicial valuation or market auction) may theoretically result in a perfect valuation,

Congress has provided the credit bid mechanism as insurance for secured creditors to

protect against an undervaluation of assets sold. Secured creditors who believe their

collateral is being sold for too low a price may bid it higher and use as credit the dollars

they have already extended (together with interest and other secured costs) to debtors. The

benefit to debtors is that every additional dollar of value realized by sale of the collateral

is one less dollar that needs to come out of the rest of the bankruptcy estate, which in turn

may represent additional distribution to unsecured creditors. This effect is evidence of

Congress's intent to protect secured creditors and maximize recovery at any sale free of

liens, under the plan or under § 363, through § 363(k)'s credit bidding requirement."); *Beal*

*Bank, S.S.B. v. Waters Edge Ltd. Partnership*, 248 B.R. 668 (D. Mass. 2000) (the right to credit bid gives the secured creditor protections against selling collateral too cheaply).

In the other hand, and regarding Logisitic's opposition to the payment to Oriental from the net proceeds from a sale of substantially all or any of Debtor's assets securing the Loan Agreement, Logistic is omitting the certain relevant information. First, Oriental is not improving its position by the inclusion of ¶18 of the Stipulation. Instead, Debtor and Oriental are recognizing their pre-petition  contractual rights included in ¶24 of the Term Loan Agreement executed by them, in which Debtor agreed, among other things, that in case of any sale or disposition of the Borrower's (Debtor) assets outside of the ordinary course of business of Borrower (Debtor), then Borrower (Debtor) shall apply one hundred percent (100%) of the net proceeds of such sale or disposition to the prepayment of the Credit Facility.  Second, Logistic omits to state that pursuant to the Stipulation, that any net proceeds of the sale payable to Oriental **will be limited to an amount equivalent to the outstanding balance of the Loan Agreement, plus accrued post-petition interests and charges in accordance with the Bankruptcy Code**. Lastly, Oriental submits that in order for Debtor to propose the sale of any of its assets, it must obtain the prior consent of the court, which will certainly consider how the unsecured creditors are being affected, and the Stipulation as drafted does not hinder such obligation.

**e. Oriental's security interest attaches to the proceeds of its pre-petition collateral and the "equity of the case exception" should not be applied to this case.**

Section 552 of the Code governs attachment of pre-petition security interests to post-petition property that would otherwise become collateral upon the debtor acquiring rights in the collateral absent the debtor's bankruptcy. Under § 552(a), no pre-petition

security interest with an after acquired property provision attaches to a debtor's post-petition property. 11 U.S.C. § 552(a); *see N.H. Bus. Dev. Corp. v. Cross Baking Co., Inc. (In re Cross Baking Co., Inc.),* 818 F.2d 1027, 1029 (1st Cir.1987); *Three Partners, Inc.,* 199 B.R. at 238; *Wilke Truck Serv., Inc. v. Wiegmann (In re Wiegmann),* 95 B.R. 90, 91–92 (Bankr.S.D.Ill.1989); *see also* William L. Norton, Jr., *et al., Norton Bankruptcy Law and Practice 2d,* § 62:2 (1997).

Section 552(b), though, states the exception to this general rule. In addition to other forms of collateral not pertinent to this case, § 552(b)(1) provides that a pre-petition security interest does attach to post-petition proceeds derived from pre-petition collateral, notwithstanding § 552(a), only if that pre-petition security interest would have attached to those proceeds pursuant to applicable non-bankruptcy law. 11 U.S.C. § 552(b)(1); *see In re Mintz,* 192 B.R. 313, 318–19 (Bankr.D.Mass.1996).

Additionally, § 552(b)(1) grants courts discretion to decide, based on equitable considerations, to what extent the pre-petition security interest attaches to post-petition proceeds. 11 U.S.C. § 552(b)(1); *see Cross Baking Co., Inc.,* 818 F.2d at 1032–33; *Wiegmann,* 95 B.R. at 93.

On ¶52 of its Objection, Logistic argues that "equities of the case exception" in Section 552(b) of the Bankruptcy Code allows a debtor, committee or other party-in-interest to exclude post-petition proceeds from pre-petition property on equitable grounds, including to avoid having unencumbered assets fund the cost of a secured lender's foreclosure.

Under section 552(b)(1) an entity with a valid security interest in proceeds in property is entitled to have that interest enforced, "except to any extent that the court, after

notice and a hearing and based on the equities of the case, orders otherwise." 11 U.S.C. §

552(b)(1). Under this standard, a Bankruptcy Court is required to "strike the proper balance

between the rights of the secured creditor and the rehabilitative goals of the Code." *In re

Island Helicopter Corp.,* 63 B.R. 515, 522 (Bankr.E.D.N.Y.1986); *United Virginia Bank

v. Slab Fork Coal Co. (In re Slab Fork Coal Co.),* 784 F.2d 1188, 1191 (4th Cir.1986).

Given that the primary purpose of the "equity exception is to prevent a secured

creditor from reaping benefits from collateral that has appreciated in value as a result of

the trustee's/debtor-in possession's use of other assets of the estate," *Great–West Life &

Annuity Assurance Co. v. Parke Imperial Canton, Ltd.,* 177 B.R. 843, 855 (N.D.Ohio 1994)

quoting *Delbridge v. Production Credit Ass'n & Fed. Land Bank,* 104 B.R. 824, 826

(E.D.Mich.1989) (citations omitted), it appears that    Logistic's equities of the case

arguments do not apply to the current situation. Logistic has failed to show how Debtor or

any other party in interest's actions have caused any increase in value in Oriental's

collateral, when Debtor's Monthly Operating Reports (MOR's) shows that Oriental's

collateral is diminishing. In this case, Oriental is simply asserting a right to its validly

protected security interests recognized under Section 552(b) of the Bankruptcy Code.

Accordingly, Oriental submits that the equities of the case exception does not defeat the

Oriental's interest in the post-petition proceeds, benefits and/or products of its pre-petition

collateral owned by the Debtor.

**f.  Debtor's use of the Cash Collateral prior to the Stipulation does not impair
    Oriental's security interest in the proceeds of the cash collateral.**

Logistic argues that due to the fact that Debtor has been using Oriental's collateral

without any concession prior to the filing of the Stipulation, Oriental's security should not

extend to post-petition collateral, which necessarily encompasses the proceeds of its pre-

petition inventory and accounts receivables. In other words, Logistic is alleging that Debtor

use of Oriental's collateral without any concession for the past three months precludes

Oriental's lien and rights in the post-petition collateral and proceeds. Oriental disagrees.

In analyzing Logistics' allegation, we must look to the Puerto Rico version of the

Uniform Commercial Code, regarding a secured party's rights on disposition of collateral

and proceeds. Specifically, Section 9-315 (19 L.P.R.A. § 2265) states as follows:

> **(a) Disposition of collateral: continuation of security interest or agricultural lien; proceeds. Except as otherwise provided in this chapter**:
>
>> (1) A security interest or agricultural lien continues in collateral notwithstanding sale, lease, license, exchange, or other disposition thereof <u>unless the secured party authorized the disposition free of the security interest or agricultural lien</u>
>>
>> (2) a security interest attaches to any identifiable proceeds of collateral, and
>>
>> (3) a person to whom collateral has been disposed incurs no personal liability on account of an unauthorized transfer unless it has failed to act in good faith.
>
> **(…)**

Courts have held that a secured party's authorization may nullify its security interest

in the collateral, so long as "there is a clear manifestation of the secured party's intent that

the collateral be transferred free and clear of its security interest." *In re Southern

Properties, Inc.,* 44 B.R. 838, 843 (Bankr.E.D.Va.1984) (interpreting the Virginia version

of UCC); *In re Brubaker,* 57 B.R. 736, 740 (Bankr.W.D.Va.1986) (interpreting the

Virginia version of UCC).

However, Debtor's use of the Oriental's collateral prior to the filing of the

Stipulation has no effect on the Oriental's security interest in the proceeds of its collateral.

Section 9-315 (19 L.P.R.A. § 2265) of the Puerto Rico version of the Uniform Commercial

Code preserves Oriental's interest in its post-petition inventory and accounts, regardless of

Oriental's consent to Debtor's use of the cash collateral. Moreover, Section 363 of the

Bankruptcy Code does not alter the rule established by Section 9-315 (19 L.P.R.A. § 2265)

of the Puerto Rico version of the Uniform Commercial Code as it does not requires a

secured party to obtain a court order to preserve its rights in the proceeds of cash collateral.

Indeed, Debtor's use of Oriental's cash collateral prior to the filing of the Stipulation does

not affect Oriental's security interest in the proceeds of the cash collateral.

### III. CONCLUSION

WHEREFORE,  for all the forgoing reasons, Oriental Bank requests that the Court

enter an order denying Logisitic's Objection to the "Joint Stipulation for Interim Use of

Cash Collateral and Adequate Protection".

Respectfully submitted.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that a copy of this motion is being sent by first class mail to the
Debtor, **SKYTEC, INC.** at the address on record: 500 CARR 869, SUITE 501, CATAÑO,
PUERTO RICO 00962; and through CM/ECF to the following parties: all participants;
Debtor's attorney, the US Trustee, and Logistic System, Inc through its attorneys of record:
**Solymar Castillo Morales, Esq.; Bryan T. Glover, and Carlos A. Rodríguez Vidal.**

**DELGADO & FERNÁNDEZ, LLC**
PO Box 11750
Fernández Juncos Station
San Juan, Puerto Rico 00910-1750
☎ (787) 274-1414
🖷 (787) 764-8241

**S/MARISTELLA SÁNCHEZ RODRÍGUEZ**
MARISTELLA SÁNCHEZ RODRÍGUEZ
USDC-PR #224714