## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN THE MATTER OF:<br><br>SKYTEC, INC.<br><br>Debtor | CASE NO. 18-05288 (ESL)<br><br>CHAPTER 11 |

### URGENT MOTION REQUESTING DISQUALIFICATION OF VOTE FILED BY LOGISTIC SYSTEMS, INC. PURSUANT TO 11 U.S.C. 1126(e) AND 11 U.S.C. 1126(c)

TO THE HONORABLE COURT:

COMES NOW Debtor through its undersigned counsel and very respectfully states and prays:

1. On March 15, 2018 Logistic Systems, Inc. ("Logistics") delivered to Debtor a ballot in the amount of $5,167,601.86 rejecting Debtor's Plan of Reorganization (the "Plan").

2. The hearing for the final approval of Debtor's disclosure statement and the confirmation of the Plan is scheduled for March 26, 2018 at 2:00PM.

3. Debtor hereby requests that the ballot submitted by Logistics be disqualified pursuant to 11 U.S.C. 1126(e) and 11 U.S.C. 1126(c).

4. The ballot submitted by Logistics was made in bad faith and it should be disqualified. Logistics is a creditor who has a very litigious history with Debtor. It is a creditor that has held a grudge against Debtor due to its inability to collect the amounts now owed.

Case:18-05288-ESL11 Doc#:142 Filed:03/22/19 Entered:03/22/19 17:36:07 Desc: Main
Document Page 2 of 9

Skytec, Inc.
*Motion To Disqualify Vote* Page 2
========================================================================

5. Logistics was the main cause for Debtor's bankruptcy filing. Since the filing of the bankruptcy petition Debtor has been defending itself from all the collateral attacks that Logistics has placed on its reorganization. The record of the case clearly demonstrate that this case has been plagued by numerous attempts by Logistics to thwart the reorganization of the Debtor.

**PRE-PETITION HISTORY**

6. During the years 2009 through 2011, Debtor signed four contracts to obtain the software product and licenses from Logistics. The software was for a Computer Aided Dispatch (CAD), the end user was the Government of Puerto Rico.

7. The first contract was signed on December 31, 2009, for the CAD of the Emergency Management System of Puerto Rico. Logistics had represented to the Government of Puerto Rico and to Debtor a product that would have certain functionalities, especially in the record management system, where the government needed the latest in functionality to store the case records for many purposes, including managing the cases and keeping the stored data for statistics and other purposes. It was supposed to work at 78 municipal emergency management offices. When the product was installed, the software lacked many of the expected capabilities. In addition, there was no Record Management System (RMS) actually working. The implementation of the product was significantly delayed, even though Debtor had paid millions of dollars to Logistics for this product.

Case:18-05288-ESL11 Doc#:142 Filed:03/22/19 Entered:03/22/19 17:36:07 Desc: Main
Document Page 3 of 9

Skytec, Inc.
*Motion To Disqualify Vote*                                                                                           Page 3
========================================================================

8.  Since Debtor has had a long relationship with the government and wanted to protect that, Debtor spent two (2) years, from 2012 to 2014, programing an RMS system and integrating the communications of this product. The contract with Logistics provided that licenses on Logistics' product would commenced in June of 2012. Logistics, knowing the implementation was very delayed, and that Debtor was doing all the work, did not bill these licenses for two years (2012 to 2014), while Debtor was working in good faith to resolve the implementation problem. When the problem was resolved in 2014, and Debtor was ready to finally start paying the license to Logistics, after having incurred significant time and effort to make the project successful, Logistics decided to bill the license retroactively to June 2012. The 2012 and 2013 licenses were billed in April of 2014.

9.  When Debtor realized Logistics' attitude of not assuming responsibility for a computer program that was not working, and of trying to bill licenses retroactively when Debtor had solved the problem during those two years, Debtor decided to sue Logistics in late 2014 to recover the costs incurred by Debtor to make this software work.

10. The contracts with Logistics provided for Debtor to pay them based on certain deliverables of the software programs on the computers, but not the implementation and the making of the programs to work as such. In addition, Debtor was making payments in good faith to Logistics, as Debtor received payments from the Government. For this reason, Debtor ended up paying more

Case:18-05288-ESL11 Doc#:142 Filed:03/22/19 Entered:03/22/19 17:36:07 Desc: Main
Document Page 4 of 9

**Skytec, Inc.**
*Motion To Disqualify Vote* Page 4
================================================================================

than $6 Million to Logistics even though the programs were not working as expected and needed significant work from Debtor to make them work.

11. At the same time this happened with the first project, Debtor had signed an additional three projects with Logistics, in 2010 and 2011, to provide a CAD system to municipal law enforcement offices. These projects were significantly delayed, and in 2014, Logistics had not finished or billed the last portions of these projects, mostly those related to the RMS. The government put these projects on hold and never paid licenses (except for a small payment in one of them of $73,000). Notwithstanding this, Logistics still expected Debtor to pay for licenses on these other 3 softwares, when the job was not finished and the government was not paying Debtor.

12. The legal case against Logistics started in late 2014. Debtor sued Logistics because it has spent significant time and resources to make these software programs work and Logistics was not recognizing this fact, only wanting to collect licenses retroactively on the programs that were not working, because they lacked certain basic functionalities that the government needed. For two or three years, Debtor was manually preparing for the government many of the reports they needed in order to make up for the lack of capability of the software installed. Debtor spent two years developing a software so that the government could be satisfied in its expectations, as represented to both the government and Debtor in sales presentations made by Logistics. Logistics countersued to try to collect the amounts allegedly owed for the licenses, irrespective of the fact that in

Case:18-05288-ESL11    Doc#:142    Filed:03/22/19    Entered:03/22/19 17:36:07    Desc: Main
Document    Page 5 of 9

**Skytec, Inc.**
*Motion To Disqualify Vote*                                                                                                    Page 5
================================================================================

those periods the systems did not have the full capability and most of the reports were being prepared manually by Debtor.

13.     Unfortunately, the legal case was badly managed by Debtor's attorneys, who did not meet the deadlines to submit discovery documents and the expert witness reports.  In May 2017 the judge in the case denied Debtor the use of its expert witnesses.   Still, Debtor believed and was advised by its attorneys, that it had a very good chance to prevail in this case, since Logistics' officers had declared during depositions that the last three contracts were never finished.   During late 2017 and early 2018, Debtor tried to negotiate with Logistics in three court mandated mediation sessions. But Logistics just wanted their money for licenses for periods in which the programs had not been fully implemented and was not willing to negotiate.  In early September 2018, after the pretrial conference, Debtor's attorney advised Debtor that the Judge was going to deny Debtor the ability to present evidence for reasons unbeknown to Debtor, and that the chances of an adverse judgment were extremely high.  At that time, Debtor decided that its only alternative would be to protect itself against an imminent adverse outcome by filing a Chapter 11 Bankruptcy reorganization.

**POST PETITION HISTORY**

14.     Logistics has incurred in the following attacks to Debtor's reorganization process:

        a.     A motion for relief from stay was filed on October 1, 2018 at Docket Nos. 23 & 25, in order to continue with its district

Case:18-05288-ESL11 Doc#:142 Filed:03/22/19 Entered:03/22/19 17:36:07 Desc: Main
Document    Page 6 of 9

**Skytec, Inc.**
*Motion To Disqualify Vote*                                                                                      Page 6
========================================================================

        court case even tough the issue could have been resolved as a contested matter regarding its proof of claim.

    b.    After the 341 Meeting of Creditors, on October 19, 2019, a burdensome and overly broad request for additional information and/or documents was submitted by Logistics, which even though was beyond the scope of the 341 Meeting, Debtor complied with.  See Exhibit A.

    c.    On December 4, 2018, Logistics filed an objection to the joint stipulation for use of cash collateral that Debtor filed with Oriental Bank.  If Debtor is not allowed to use the cash collateral, it will not be able to continue to operate.

    d.    On February 14, 2019, Logistics filed an application for Rule 2004 examinations upon Debtor's officers and Oriental Bank in another effort to derail Debtor's reorganization.

    e.    On March 15, 2019 Logistic submitted its vote rejecting Debtor's Plan.

    f.    On March 15, 2019 Logistic filed an objection to Debtor's disclosure statement.

    g.    On March 15, 2019 Logistic filed an objection to Debtor's Plan, including false statements as discussed in the reply to be filed by Debtor.

15.    Section 1126 (e) of the Bankruptcy Code provides as follows:

"On request of a party of interest, and after notice and a hearing, the Court may designate any entity whose acceptance or rejection of such plan was not in good faith, or was not solicited or procured in good faith or in good faith or in accordance with the provisions of this title."

16.    Section 1126 (e) grants the bankruptcy court discretion to sanction any conduct that taints the voting process wether it violates a specific provision

or was made in bad faith. Century Glove, Inc. v. First American Bank of New York, 860 F. 2d. 94 (3rd Cir. 1988).

17.    "Bad faith" is not defined by the Bankruptcy Code.  Instead, this concept has been defined on a case by case basis.  "Bad faith" in the context of Section 1126 (e) has been defined as when a creditor attempts to extract or extort a personal advantage not available to other creditors in the class, or, when the creditor has an ulterior motive, unrelated to its claim or its interests as a creditor. In re DBSD North America, Inc., 421 BR 133 (Bkrtcy. SDNY December 21, 2009); In re Charles Str. African Methodist Episcopal Church, 480 BR 66 (Bankr. D. Mass. 2012).

18.    The Court in the case of DBSD North America, supra, identified several badges of bad faith that may justify disqualification.  These include efforts to assume control of the Debtor, put the Debtor out of business or otherwise gain a competitive advantage and destroy the Debtor out of pure malice

19.    In this case Logistics's actions prior and after the bankruptcy petition, when looked as a whole, reflect that it has tried to put the Debtor out of business.

20.    Logistics is also objecting the confirmation of the plan.  This coupled with the fact that it holds a controlling position in the unsecured creditors class is essentially an attempt to destroy the Debtor.  See In re: MacLeod Company, Inc. 63 BR 654 (Bkrtcy. SD Ohio 1986) and 7-1126 Collier on Bankruptcy P 1126.06.

21. 7-1126 Collier on Bankruptcy P 1126.06 provides that the Court must look for some kind of smoking gun conduct or a fact that in and of itself raises question of bad faith without getting into the argumentation as to wether the plan is confirmable. Citing <u>In re: Peter Thompson Assoc., inc.,</u> 155 BR 20 (Bkrtcy. DNH 1993)

22. As we have stated before, Logistics is a creditor which has a very litigious history with the Debtor. Logistics has also showed a retaliatory pattern of conduct in this case.

23. Debtor understands that the facts of this case show that Logistics's vote was made in bad faith and out of revenge against Debtor. It should therefore be designated and its vote should be disqualified.

24. This issue has a significant impact on confirmation, therefore Debtor hereby requests that this motion be heard along with all matters related to confirmation on the hearing scheduled for March 26, 2019.

**WHEREFORE,** Debtor very respectfully requests that for the above state reasons, this Honorable Court designate the vote of Logistics as done in bad faith and disqualify this creditor's vote. The Debtor also requests that due to the fact that the confirmation hearing is scheduled for March 26, 2019, and this issue has a significant impact on confirmation, this motion be heard along with all matters related to confirmation during said hearing.

**CERTIFICATE OF SERVICE:** I hereby certify that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF

Case:18-05288-ESL11 Doc#:142 Filed:03/22/19 Entered:03/22/19 17:36:07 Desc: Main
Document Page 9 of 9

**Skytec, Inc.**
*Motion To Disqualify Vote* Page 9
=========================================================================

systems, which will send notification of such filing to the Office of the United States Trustee, and all participants of CM/EMF.

San Juan, Puerto Rico, this 22nd day of March, 2019.

*s/ Alexis Fuentes-Hernández, Esq.*
**Alexis Fuentes-Hernández, Esq.**
USDC-PR 217201

**FUENTES LAW OFFICES, LLC**
P.O. Box 9022726
San Juan, PR 00902-2726
Tel. (787) 722-5215, 5216
E-Mail: alex@fuentes-law.com