# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN THE MATTER OF:<br><br>SKYTEC, INC.<br><br>Debtor | CASE NO. 18-05288 (ESL)<br><br>CHAPTER 11 |

### REPLY TO LOGISTIC SYSTEMS, INC.'S OBJECTION
### TO CONFIRMATION OF PLAN OF REORGANIZATION

TO THE HONORABLE COURT:

Comes now Debtor through its undersigned counsel and very respectfully states and prays:

1. On September 12, 2018, Debtor filed its voluntary petition for reorganization under the provisions of Chapter 11 of the Bankruptcy Code, and as of that date has been operating its business and managing its affairs as a debtor in possession, as provided for in the Bankruptcy Code. See Docket No. 1.

2. On January 16, 2019, Debtor filed its Disclosure Statement and Plan of Reorganization. See Docket Nos. 91 and 92.

3. On March 15, 2019, Logistic Systems, Inc. ("Logistics") filed an objection to the confirmation of Debtor's Plan of Reorganization. See Docket No. 132.

4. Debtor will proceed to refute all the allegations contained in the objection filed by Logistics in the same order as these were raised, but first it must underscore the fact that the objection is nothing short of a shotgun approach objection that merely

recites boilerplate objections. The objection is another example of Logistics' modus operandi of litigating unwarranted issues for the sole intention of harassing Debtor. Furthermore, it continues to try to muddy the waters by listing payments made to insiders (including one that was never made as discussed in Debtor's reply to the objection to disclosure statement) without any real objection.

## I. THE PLAN IS NOT FAIR AN EQUITABLE

5. Logistics commences its argument by using incomplete and/or misplaced information. It alleges that "the going concern value of the Debtor's assets is approximately $6.77 million". See Objection at Page 12, Paragraph 45. However, nothing can be further from the truth. As thoroughly explained by CPA Luis R. Carrasquillo, Debtor's going concern value is approximately $519,000 assuming that the corporation is not liquidated. See Page 14 of the Liquidation Analysis submitted as Exhibit E of Debtor's disclosure statement.

6. Logistics continues to make legally groundless allegations by assigning and/or assuming values for Debtor's assets, without taking into considerations the detailed explanations provided by CPA Carrasquillo in the liquidation analysis.

7. To try to prove that the Plan is not fair and equitable, Logistics proceeds to allege that the Plan does not comply with the absolute priority rule and allegedly does not comply with the new value exemption to the absolute priority rule.

8. For the new value exception to absolute priority rule to apply, four requirements must be satisfied: (1) there must be a contribution that is new capital; (2) that contribution must be necessary for a successful reorganization; (3) the contribution

must be in money or money's worth; and (4) the contribution must be reasonably equivalent to value of property acquired by purchaser. 11 U.S.C.A. § 1129(b)(2)(B)(ii). *In re Cypresswood Land Partners, I*, 409 B.R. 396, 51 Bankr. Ct. Dec. (CRR) 51 (Bankr. S.D. Tex. 2009).

9. In order to qualify for new value exception to absolute priority rule, old equity must contribute capital which is new, substantial, necessary for success of Chapter 11 plan, reasonably equivalent to the value retained, and in form of money or money's worth. 11 U.S.C.A. § 1129(b)(2)(B)(ii). *In re Draiman*, 450 B.R. 777, 107 A.F.T.R.2d 2011-2180 (Bankr. N.D. Ill. 2011).

10. There is new value exception to "absolute priority" rule, under which junior class may be allowed to retain an equity interest in reorganized Chapter 11 debtor, even though a senior class will not be paid in full, if junior class has contributed new value (1) in money or money's worth (2) that is reasonably equivalent to value of equity interest retained and (3) that was necessary for implementation of feasible reorganization plan. 11 U.S.C.A. § 1129(b)(2)(B)(ii). *In re Greenwood Point, LP*, 445 B.R. 885 (Bankr. S.D. Ind. 2011).

11. Debtor complies with the new value exemption to the absolute priority rule insofar as Debtor's shareholders are contributing $200,000 in cash, which are needed for the feasibility of the Plan. See Feasibility Report filed at Docket No. 140. The funds to be contributed by the shareholders are in cash, are reasonably equivalent to the going concern value of the Debtor, and is necessary for the implementation of the Plan. All of the aforementioned is not only detailed in the Feasibility Report of CPA

Carrasquillo, but will be testified by CPA Carrasquillo during the confirmation hearing.

12. The majority of the cases cited by Logistics are inapposite to the captioned case insofar as they are Chapter 11 cases of individual debtors, the dividend paid to unsecured creditors was minimal, or the funds contributed by the shareholders were not reasonably equivalent to the going concern value of the Debtor.

13. The $200,000 to be contributed by the shareholders is more than reasonably equivalent to the going concern value of the Debtor, which was valued by CPA Carrasquillo at approximately $519,000 but with the caveat that the same would be 50% to 75% of said amount if the case is converted to Chapter 7. Furthermore, in the instant case the unsecured creditors will receive approximately 15% of their claims, which should also be taken into consideration when deciding the equivalent value. Courts have ruled that when deciding if the new value is reasonably equivalent, particularly in a closely held corporation like the captioned Debtor, the amount of the contribution, its relation to the amount of unsecured claims and its relation to the plan's distribution to unsecured creditors to be most significant. See *In re Haskell Dawes, Inc.*, 199 B.R. 867 (Bankr. Court, ED Penn 1996). In the instant case, Debtor's cash flows show that without the shareholders' contribution, the unsecured creditors would receive almost half of the proposed dividend. The contribution is not only substantial, is significant, and essential for Debtor to be able to provide the 15% dividend to unsecured creditors.

**II. THE PLAN IS NOT PROPOSED IN GOOD FAITH**

14. Section 1129(a)(3) of the Bankruptcy Code requires a plan to have been

"proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). The good faith standard requires a showing that "the plan was proposed with 'honesty and good intentions' and with 'a basis for expecting that the reorganization can be effect'[ive.]" Manville I, 843 F.2d at 649 (citations omitted); see also In re Texaco, Inc., 84 B.R. 893, 907 (Bankr. S.D.N.Y. 1988) ("[A] plan is considered proposed in good faith if there is a likelihood that the plan will achieve a result consistent with the standards prescribed under the Code.") (quoting Hanson v. First Bank of S.D., 828 F.2d 1310 (8th Cir. 1987)). In determining whether a plan has been proposed in good faith, courts have recognized that they should avoid applying any hard and inflexible rules, but should instead evaluate each case on its own merits. See In re Century Glove, 1993 WL 239489, at *4 (good faith should be evaluated in light of the totality of circumstances surrounding confirmation); In re Cellular Info. Sys., Inc., 171 B.R. 926, 945 (Bankr. S.D.N.Y. 1994) (same).

15. Here, the Plan's purpose and contents are honest, legitimate and viable. The Plan's paramount objectives are the reorganization of Debtor's existing business as a going concern, the restructuring of the Debtor'S liabilities and the preservation and maximization of the value of the Debtor's estate that allows creditors to realize a fair and equitable recovery on their claims.

16. Logistics proceed to rehash the same arguments submitted either on earlier arguments or in its objection to the disclosure statement. Debtor hereby incorporate by reference its reply to said arguments.

**III. THE PLAN IS NOT IN THE BEST INTEREST OF CREDITORS**

17. Debtor hereby refers the Court to the Liquidation Analysis attached as Exhibit E of the Disclosure Statement and the Feasibility Report prepared by CPA Luis R. Carrasquillo, both of which clearly prove that the Plan is in the best interest of the creditors.

### IV. THE PLAN IS NOT FEASIBLE

18. Debtor hereby refers the Court to the Feasibility Report prepared by CPA Luis R. Carrasquillo, which clearly prove that the Plan is feasible.

### V. THE PLAN IMPROPERLY CLASSIFIES CLASS 2

19. Again, the holders of executory contract hold claims different in nature than the holders of general unsecured claims. In fact, Debtor could have placed Logistics in a class by itself since it had a contingent claim, but decided to include it in the general unsecured pool because a judgment was imminent.

20. Furthermore, as evidence by the claims register, said creditors had pre-petition claims due to arrears in the leases and as such are not "manufactured". The allegation made by Logistics is legally groundless.

**WHEREFORE**, Debtor respectfully requests that this Court denies the objection to the confirmation of the plan of reorganization filed by Logistics; and conversely proceeds to confirm Debtor's plan of reorganization.

**CERTIFICATE OF SERVICE:** I hereby certify that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system,

which will send notification of such filing to the Assistant US Trustee, and all participants of CM/ECF.

San Juan, Puerto Rico, this 24th day of March, 2019.

*s/ Alexis Fuentes-Hernández, Esq.*
**Alexis Fuentes-Hernández, Esq.**
USDC-PR 217201

**FUENTES LAW OFFICES, LLC**
P.O. Box 9022726
San Juan, PR 00902-2726
Tel. (787) 722-5215, 5216
E-Mail: alex@fuentes-law.com