UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN THE MATTER OF: <br><br> SKYTEC, INC., <br><br> Debtor. | CASE NO. 18-05288-ESL <br><br> CHAPTER 11 |

**LOGISTIC SYSTEMS, INC.'S RESPONSE TO THE DEBTOR'S URGENT MOTION REQUESTING DISQUALIFICATION OF VOTE FILED BY LOGISTIC SYSTEMS, INC.**

**TO THE HONORABLE COURT:**

**COMES NOW** Logistic Systems, Inc. (hereinafter "LogiSYS" or "Logistic"), by and through the undersigned counsels, and very respectfully presents its Response to the Debtor's Urgent Motion Requesting Disqualification of Vote (the "Urgent Motion"):

**PRELIMINARY STATEMENT**

Debtor has proposed a Plan (the "Plan") that, if approved, would benefit no one but selectively chosen creditors and the Debtor's insiders. LogiSYS has done nothing in this case but exercise the rights afforded to it under the Bankruptcy Code. The Debtor, in filing its Urgent Motion, is attempting to circumvent the requirements of the Bankruptcy Code so that its insiders can remain in control and continue to use their company as a piggy bank and avoid obligations to LogiSYS that are due and owing. LogiSYS has objected to confirmation of the Plan because, among other reasons, the information that the Debtor itself has provided in this case makes clear that the Plan constitutes a blatant violation of the absolute priority rule.

By seeking to strike LogiSYS's vote against the Debtor's self-serving plan, the Debtor is desperately attempting to find a way to avoid having this Court closely examine its Plan and determine whether it improperly violates the rights of an impaired dissenting class. If LogiSYS's vote is struck, the absolute priority rule is no longer a barrier to plan confirmation. In this Response, LogiSYS (a) incorporates by reference its Plan Objection (Dkt. # 132) and Disclosure Statement Objection (Dkt. # 131) in their entirety (b) will avoid the sort of mud-slinging that the Debtor has done in its Urgent Motion, [1] and (c) will make clear that the only option for this Court that will promote the best interests of creditors is to appoint a Trustee, as asserted in LogiSYS's Motion for the appointment of a Chapter 11 Trustee being filed contemporaneously herewith.

## **LOGISTIC SYSTEMS' RESPONSE**

1. The right of creditors to vote to accept or reject a plan of reorganization is one of the most fundamental tenets of the Bankruptcy Code. For that reason, courts have recognized that depriving creditors of such an essential right is a drastic remedy with severe implications. *See In re Adelphia Commc'ns, Corp.*, 359 B.R. 54, 61 (Bankr. S.D.N.Y. 2006) (noting the severe implications of vote designation). Moreover, courts have consistently recognized that designation of votes is the exception, not the rule, and that the party seeking to have a ballot disallowed bears a heavy burden of proof. *See In re Kovalchick*, 175 B.R. 863, 875 (Bankr. E.D. Pa. 1994) ("The burden on a party seeking to have a ballot disallowed is heavy."); *DISH Network Corp. v. DBSD N. Am., Inc. (In re DBSD N. Am., Inc.)*, 634 F.3d 79, 101-02 (2d Cir. 2011) ("Bankruptcy courts

---

[1] The 'classic definition' of chutzpah has been described as 'that quality enshrined in a man who, having killed his mother and father, throws himself on the mercy of the court because he is an orphan.'

*Motorola Credit Corp. v. Uzan*, 561 F.3d 123, 128 (2nd Cir. 2009) (citing Leo Rosten, The Joys of Yiddish 92 (1968)).

should employ 11 U.S.C. § 1126(e) designation sparingly, as the exception, not the rule. For this reason, a party seeking to designate another's vote bears the burden of proving that it was not cast in good faith."); *In re The Heritage Org., L.L.C.*, 376 B.R. 783 (Bankr. N.D. Tex. 2007) ("The party seeking to have a ballot disallowed has a heavy burden of proof.") (*quoting In re Adelphia Commc'ns, Corp.*, 359 B.R. at 61).

2. Last year, the Ninth Circuit held that protecting a claim to its fullest is not evidence of bad faith at all. In *Pac. Western Bank v. Fagerdala USA - Lompoc, Inc. (In re Fagerdala USA - Lompoc, Inc.)*, 891 F.3d 848 (9th Cir 2018) the Court explained several instances to differentiate the defense of the claims from bad faith actions and cited that bad faith is determined when the creditor was "not attempting to protect [its] own proper interests, but . . . w[as], instead, attempting to obtain some benefit to which [it] w[as] not entitled." *See Figter Ltd. v. Teachers Ins. & Annuity Ass'n of Am. (In re Figter),* 118 F.3d 635, 638-639 (9th Cir. 1997). Making reference to *In re DBSD N. Am. Inc*., 634 F.3d 79, 104(2d Cir. 2011) in *Fagerdala* the court also noted that bad faith is found when "[t]he purchasing party . . . was less interested in maximizing the return on its claim than in diverting the progress of the proceedings to achieve an outside benefit." The Court of Appeals continued noting examples of bad faith to include: a non-preexisting creditor "purchas[ing] a claim for the purpose of blocking an action against it," competitors purchasing claims to "destroy the debtor's business in order to further their own," or a debtor arranging to have an insider purchase claims. *See Figter*, 118 F.3d at 639 (citations omitted. In *Fagerdala*, 891 F.3d at 856 the court emphasized that "**Merely protecting a claim to its fullest extent cannot be evidence of bad faith. There must be some evidence beyond negative impact on other creditors**."

3. The "good faith voting requirement set forth in § 1126(e) does not require, nor can it expect, a creditor to act with selfless disinterest." *In re First Humanics Corp.*, 124 B.R. 87, 92 (Bankr. W.D. Mo. 1991) (citing *In re Gilbert*, 104 Bankr. 206, 216 (Bankr. W.D. Mo. 1989) and *In re Federal Support Co.*, 859 F.2d 17, 19 (4th Cir. 1988)).

4. For voting purposes, "the Code assumes that parties will act in their own self-interest and allows them to do so." *In re DBSD N. Am., Inc.*, 634 F.3d at 102.

5. The "Supreme Court has stated that the purpose of imposing a 'good faith' standard on the voting process was to prevent the use of 'obstructive tactics and hold up techniques' to procure an unfair advantage over other creditors in the confirmation process. *In re Applegate Property, Ltd.*, 133 B.R. 827, 834 (Bankr. W.D. Tex. 1991) (citing *Young v. Higbee Co.*, 324 U.S. 204, 210-11, 89 L. Ed. 890, 65 S. Ct. 594 (1945)).

6. The bad faith standard in § 1126(e) provides that "[i]f a person seeks to secure some untoward advantage over other creditors for some ulterior motive, that will indicate bad faith. **But that does not mean that creditors are expected to approach reorganization plan votes with a high degree of altruism and with the desire to help the debtor and their fellow creditors. Far from it.**" *Figter Ltd. v. Teachers Ins. & Annuity Ass'n of Am. (In re Figter Ltd.)*, 118 F.3d 635, 639 (9th Cir. 1997) (emphasis added).

7. "[N]o bad faith is shown when a creditor chooses to benefit his interest as a creditor as opposed to some unrelated interest." *Id*.

8. "As long as a creditor acts to preserve what he reasonably perceives as his fair share of the debtor's estate, bad faith will not be attributed[.]" *Id*.

9. Here, the Debtor has failed to carry its heavy burden and has not articulated a single justifiable basis for the striking of LogiSYS's vote on the Plan.[2]

10. LogiSYS earned a civil judgment in federal district court against Debtor. LogiSYS wants to be paid. LogiSYS wants to make sure that the Debtor is held accountable for its "extreme misconduct" employed pre-petition. LogiSYS is not trying to obtain an unfair advantage over other creditors. LogiSYS instead wants to make sure that the Debtor's equity is not permitted to maintain ownership of the company in violation of the absolute priority rule. In other words, LogiSYS has opposed confirmation because it believes the Debtor has acted in bad faith and has proposed a plan that is patently unconfirmable. The Plan does not provide unsecured creditors with their "fair share of the debtor's estate" and, as such, LogiSYS has voted no and objected to confirmation. This is not bad faith. Instead, this is LogiSYS protecting the interests of the class of unsecured creditors and standing up to the Debtor's "extreme misconduct."

11. In the Urgent Motion, the Debtor makes numerous unsubstantiated allegations about LogiSYS's pre-petition and post-petition conduct. LogiSYS responds as follows.

### I. **THE DEBTOR'S ALLEGATIONS CONCERNING LOGISYS'S PRE-PETITION CONDUCT ARE ABSURD AND CONTRARY TO THE DISTRICT COURT RECORD.**

12. The Debtor's allegations concerning LogiSYS's pre-petition conduct are untrue, defamatory, and contrary to reality and the District Court's findings.

---

[2] Per its terms, § 1126(e) requires "notice and a hearing." Even though the Urgent Motion uses pre-petition conduct and actions taken by LogiSYS months ago, the Urgent Motion was filed only one business day prior to the proposed hearing. LogiSYS does not object to this Court considering the merits of the Urgent Motion on March 26, but notes that the Debtor has remained completely silent throughout the entirety of this case on alleged events that occurred months ago and LogiSYS consequently questions why the Urgent Motion was filed so late.

5

13. In the Urgent Motion, the Debtor implies that LogiSYS acted in bad faith towards the pre-petition Debtor and relies on this purported misconduct to take away LogiSYS's right to vote against the Plan.

14. The pre-petition litigation between LogiSYS and the Debtor has already been adjudicated. In that regard, the Debtor is bound by the District Court's findings and is collaterally estopped from relitigating the issues decided by the District Court. *See Ashe v. Swenson*, 397 U.S. 436, 443, 90 S. Ct. 1189 (1970) ("[W]hen an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit."); *Keystone Shipping Co. v. New England Power Co.*, 109 F.3d 46, 51 (1st Cir. 1997) (Collateral estoppel "bars relitigation of any factual or legal issue that was *actually* decided in previous litigation." (internal quotations and citations omitted)); *see also Gray v. Tacason (In re Tacason)*, 537 B.R. 41, 51-52 (B.A.P. 1st Cir. 2015) (default judgments have preclusive effect where the defendant had " actively or substantially participated in the action" or "deliberately prevent[ed] resolution of it and a default judgment [was] entered against it as a sanction for refusing to comply with valid court orders") (citations omitted)); *D'Amour v. Birchall (In re Birchall),* 501 B.R. 142, 146, 149 (Bankr. D. Mass. 2013) (applying collateral estoppel to default judgment entered as a sanction for debtor's discovery misconduct when debtor actively participated in litigation over a substantial period).

15. Given the pre-petition Debtor's "extreme misconduct" that is set forth in painstaking detail by the District Court, LogiSYS is surprised that the Debtor references its pre-petition litigation with LogiSYS. While this Court is likely well aware of the pre-petition litigation **filed by Debtor itself**, LogiSYS will highlight a few of the District Court's findings to show how

6

absurd it is for the Debtor to assert that anything that happened pre-petition should give this Court a reason to strike LogiSYS's vote against the Debtor's plan.

16. In its September 12, 2018 Order (the "District Court Order", a copy of which is attached hereto as Exhibit "A")[3], the District Court found as follows:

- "Skytec missed its first discovery deadlines by months, ignoring discovery requests and rescheduling a meet and confer multiple times only to skip the meeting entirely." *See* District Court Order, p. 4.

- "Skytec has offered excuses for its shortfalls, but most ring hollow. Before delving into them, it is important to note that these excuses are of the worst order. They do not engage with the substance of Logistic's claims, explain said conduct, or acknowledge an iota of responsibility." *See* District Court Order, p. 4.

- "Not only did [Skytec's] conduct prejudice Logistic's ability to prepare for trial, it drains the resources of the parties and the court." *See* District Court Order, p. 5.

- "Skytec's refusal to produce highly relevant documentation provides a strategic advantage." *See* District Court Order, p. 6.

- "Skytec blatantly ignored court orders to produce the same categories of documents not once but twice." *See* District Court Order, p. 8.

- "Skytec's misconduct leads the court to discuss not missing pieces of relevant evidence but rather missing categories of evidence vital to the heart of the litigation.

---

[3] This Court may take judicial notice of the District Court Order and the Damages Order (defined below). *See Kowalski v. Gagne*, 914 F.2d 299, 305 (1st Cir. 1990) ("federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand").

> Skytec's excuses, noted above, are inadequate to mitigate the prejudice caused." *See* District Court Order, p. 8

- "Skytec's misbehavior and obstructionism during the discovery process has been extensive." *See* District Court Order, p. 9.

- "Skytec denied Logistic access to five entire categories of evidence relevant to its defenses and its counterclaims, thus preventing Logistic from building its case. Logistic's inability to argue or defend its currently pending motion for summary judgment captures the impact of Skytec's misconduct." *See* District Court Order, p. 9.

- "Skytec has committed extreme misconduct not only by flouting the district court's scheduling orders but also by willful indifference to Logistic's attempts to coordinate discovery, and persistent refusals to produce documents in its possession." *See* District Court Order, p. 4.

- "Less than a week before trial, Skytec has yet to produce the documents." *See* District Court Order, p. 2.

17. The Debtor did not seek reconsideration of this Order. Instead, it ran to this Court, seeking a more favorable forum to allow it to continue to attempt to use the legal system to provide it with a strategic advantage in avoiding its obligations owed to LogiSYS.

18. In its Urgent Motion, the Debtor claims that the District Court's Order was entered "for reasons unbeknown to Debtor."[4] This statement is troubling, but not surprising. Indeed, the

---

[4] Debtor was, of course, aware of the Motions. In fact, LogiSYS's original Motion for Contempt, Dismissal of Complaint, and for Default Judgment on the Counterclaim filed by LogiSYS on June 14, 2017, Civil Dkt. # 65, since it opposed the motion on June 25, 2017, Civil Dkt. # 66. After the

8

District Court noted that the Debtor (a) "blatantly ignored" its obligations in the litigation, (b) failed to "acknowledge an iota of responsibility", and (c) employed "willful indifference" to the obligations it owed to LogiSYS.

19. By filing the Urgent Motion, the Debtor is attempting to have this Court revisit issues already decided by the District Court, which suggests that the Debtor's pre-petition failure to "acknowledge an iota of responsibility" continues post-petition as well.

20. Additionally, this Court should note that (a) it was the Debtor that chose to file the lawsuit against LogiSYS; (b) LogiSYS prevailed in the litigation on each and every claim asserted between the parties; and (c) the District Court has determined that LogiSYS is entitled to a judgment against the Debtor in an amount in excess of $4.1 million dollars, which includes attorney's fees and expenses in the amount of $859,962.98. A true and correct copy of the District Court's Order setting LogiSYS's judgment amount is attached hereto as Exhibit "B".

21. Practically every action that LogiSYS has taken since the Debtor decided to file suit has been in self-defense. It was the Debtor who filed suit. It was the Debtor who tried to win the litigation by hiding relevant documents. It was the Debtor who "blatantly ignored court orders."

22. Simply put, LogiSYS's efforts to pursue and protect its rights, notwithstanding the Debtor's "willful indifference" to its obligations and responsibilities, do not amount to bad faith.

23. The District Court's order, which is binding on the Debtor, speaks for itself and LogiSYS will not burden this Court with further comment on the absurdity of the Debtor's allegations concerning LogiSYS's pre-petition conduct.

---

Court of Appeals and the District Court exhorted the parties reach a settlement, that effort proved unsuccessful, and it was necessary to refile the motion on June 25, 2018, Civil Dkt. #104, and Debtor filed an Opposition to that motion, too, on July 16, 2018, Civil Dkt. # 128.

**II. THE DEBTOR'S ALLEGATIONS CONCERNING LOGISYS'S POST-PETITION CONDUCT ARE ABSURD AND CONTRARY TO THE BANKRUPTCY COURT RECORD.**

24. The Debtor also alleges that LogiSYS has acted in bad faith during the pendency of its bankruptcy case and asserts certain purported examples of such bad faith in Paragraph 14 (a-g) of the Motion. With respect to LogiSYS's post-petition conduct, the record in this case speaks for itself. Indeed, apart from one important exception detailed below, LogiSYS does not dispute the Debtor's factual allegations contained in Paragraph 14 (a-g) of the Motion[5]. For the Court's convenience, LogiSYS will set forth each of the Debtor's allegations and LogiSYS's response below.

25. *LogiSYS filed a Motion for Relief on October 1, 2018. See* Urgent Motion ¶ 14(a). This is true. In its Motion for Relief, *LogiSYS* made clear that it was seeking relief from the automatic stay "for the limited purpose of allowing the default damages hearing and request for prevailing party attorneys' to proceed in the District Court." *See* Dkt. # 25, p. 12 of 15. The basis for this request was that judicial economy would be served by allowing the District Court to fully liquidate LogiSYS's claim since the "District Court has unique familiarity with the underlying dispute and the parties." *See* Dkt. No. 25, p. 11 of 15. Indeed, LogiSYS expressly stated that "[a]bsent further order of this Court, LogiSYS will not enforce the judgment it seeks to obtain from the District Court. In that regard, lifting the stay will not result in any interference with the bankruptcy case." *See id.*

26. The Court granted this Motion because, among other good reasons, "The U.S. District Court is familiar with all cases upon which judgment will be entered." *See* Dkt. No. 56.

---

[5] It should go without saying that LogiSYS vociferously opposes the Debtor's assertion that any of these actions amount to bad faith.

10

27. The Debtor has made no allegation that LogiSYS has violated the automatic stay or any order of this Court.

28. LogiSYS's actions in this case concerning the automatic stay do not amount to bad faith.

29. *LogiSYS requested "additional information and/or documents" after the 341 meeting. See* Urgent Motion, ¶ 14(b). LogiSYS likewise does not contest this allegation. While Debtor contends that LogiSYS requested additional information after the 341 meeting, it fails to admit that the requests were done during the 341 meetings of creditors with the US Assistant Trustee's officer intervention setting the response date and with the purpose to validate Debtor's officers' testimonies related to the insufficient explanations of the numbers disclosed in the schedules and the Statement of Financial Affairs. The written requests were sent upon agreement at the three (3) 341 meetings summarizing the oral requests at each meeting.

30. LogiSYS's reasoning for requesting "additional information and/or documents" from the Debtor should be abundantly clear to this Court. Without belaboring the point, the District Court entered an order of default against the Debtor for its failure to engage in discovery and withholding of relevant documents in the case. LogiSYS naturally wanted to review the Debtor's documents. When the statement of financial affairs reflects disbursements to the rest of the creditors in amounts around $2,125,778.75 within the 90 days prior to the filing of the petition, none of which become creditors at the time of the filing; and, also indicates around $761,330.98 in disbursements for the benefit of insiders within the year prior to the filing (while litigation was ongoing and in preparation for trial), it is reasonable that the only creditor to the estate will want to examine all the records.

31. While the Debtor is using the disqualification motion to complain about the discovery performed, it also failed to admit that the information requested was used for the preparation of the schedules, the disclosure statement and the plan of reorganization. LogiSYS's request was no more than the backup documentation of the disclosed information. True to the fact is that the requested "additional" information clarified the true purpose of certain expenses incurred by the debtor for the only benefit of the insiders. Expenses such as the mortgage payments for a property owned by Mr. Barreda, hidden as operational payments, and then reclassified as compensation; cars purchased by the corporation for the use and benefit of shareholders or a spouse who do not work for the company, payments of the student loan of the grown son lawyer of an independent contractor, salaries paid in excess of the national standards, and so forth. LogiSYS indeed requested documents from the Debtor and LogiSYS is not surprised that the Debtor has taken issue with LogiSYS's efforts to discover information about the Debtor.

32. The Debtor refused to engage in discovery pre-petition (giving rise to the District Court's order and judgment) and unsurprisingly, has taken issue with LogiSYS's discovery efforts in this bankruptcy.

33. The Debtor never objected to the requests made after the § 341 meeting and never sought a protective order from this Court. Yet, the Debtor now tries to assert that LogiSYS's request for "additional information and/or documents" amounts to bad faith.

34. LogiSYS's post-petition efforts to obtain "additional information and/or documents" from the same entity that engaged in pre-petition "misbehavior and obstructionism during the discovery process" does not amount to bad faith.

35. *LogiSYS objected to the Cash Collateral Stipulation.* *See* Urgent Motion, ¶ 14(c). LogiSYS does not contest this allegation either. LogiSYS must emphasize to this Court, however,

that it has never objected to the Debtor's **use** of cash collateral but has only objected to what it feels are unnecessary concessions being granted to Oriental Bank that work to the detriment of the bankruptcy estate. *See* Dkt. # 71, p. 17 of 19 ("LogiSYS has no objection to Oriental being provided with monthly payments in the amount provided by the underlying Loan Documents and with the right to require cash collateral be deposited into a segregated account, but strenuously objects to every single other concession proposed by the Debtor in the Cash Collateral Stipulation").

36. LogiSYS's objection to the Cash Collateral Stipulation (Dkt. # 67) was not filed to prevent the Debtor from operating or otherwise using its cash; instead, it was filed because the "Debtor appears to be ignoring its fiduciary duties to unsecured creditors[.]" *See* Dkt. # 71, p. 14 of 19. LogiSYS does not understand, and the Debtor has provided no explanation, how its objection to the Cash Collateral Stipulation amounts to bad faith, more so when the discovered information reveals that Oriental have remained adequately protected through the bankruptcy process.

37. *LogiSYS filed Rule 2004 Motions*. *See* Urgent Motion, ¶ 14(d). LogiSYS does not contest this allegation and Debtor has not explained how the Rule 2004 Motions, and the resulting examinations, constitute bad faith. LogiSYS followed the rules. It filed Motions seeking Court authority to permit it to take Rule 2004 examinations. These motions were granted and authority was granted.[6] The Debtor never objected to these motions. As stated throughout, LogiSYS's efforts to utilize the discovery process do not constitute bad faith.

---

[6] Oriental Bank filed a motion to reconsider the order granting LogiSYS's Rule 2004 Motion concerning Oriental Bank. Counsel for LogiSYS and Oriental Bank were able to meet, confer, and agree on the scope of the Oriental Bank 2004 examination.

38. *LogiSYS voted against Plan confirmation, objected to the Disclosure Statement, and objected to confirmation of the Plan*. *See* Urgent Motion, ¶¶ 14(e-g). With one important exception, LogiSYS does not contest these allegations. The reasons for LogiSYS's vote and opposition to the Disclosure Statement and Plan are self-explanatory and set forth in Dkt. ## 131 and 132.

39. Without providing a single example, the Debtor incorrectly asserts that LogiSYS's Plan objection contains "false statements[.]" LogiSYS must emphasize to this Court that **all** factual statements made in its Plan Objection come from the Disclosure Statement, the Plan, the Debtor's Monthly Operating Reports, Rule 2004 examinations, the Debtor's Schedules and Statement of Financial Affairs, or communications from Debtor's counsel. In other words, these allegations came from statements made by or on behalf of the Debtor and/or Oriental Bank. While the Debtor may take issue with the LogiSYS's interpretation of the information provided by the Debtor, it does not mean that the factual allegations upon which these interpretations are derived are incorrect.

40. The Debtor is correct that the parties have had "a very litigious history" with each other to the extent that it refers to the lawsuit it filed and lost. However, it has pointed to nothing improper done by LogiSYS or provided any suggestion of bad faith. LogiSYS wants to be paid the over $4.1 million that the Debtor owes it pursuant to a federal district court judgment. As outlined in its Plan Objection, LogiSYS views the Plan as an attempt by the Debtor's equity to retain ownership of the company while paying the dissenting class of unsecured creditors practically nothing. The very figures advanced by the Debtor in its liquidation analysis show a clear violation of the absolute priority rule. While LogiSYS has indeed pursued its legal rights

14

and remedies in this case, **it has taken no action in this case that has not been authorized by this Court and/or the Bankruptcy Code.**

41. The Debtor knows that if its Urgent Motion is granted, there no longer will be a dissenting impaired class. Consequently, the absolute priority rule would no longer be applicable. *See* 11 U.S.C. § 1129(b)1) (noting that absolute priority rule only applies when a class of claims is impaired and dissents). In that regard, this Urgent Motion appears to be yet another attempt by the Debtor's insiders to favor themselves over the company's unsecured creditors. But Debtor's arguments fall short from complying with the heavy burden of proof imposed in a request for designation of claims. Just as the District Court found the pre-petition Debtor's conduct to be wholly inappropriate,[7] this Court should likewise deny the Urgent Motion and appoint a Chapter 11 Trustee so that there is finally someone in charge of the Debtor who will actually "acknowledge and iota of responsibility[.]"

### III. LOGISTIC SYSTEMS' PROPOSED PROCEDURE

42. At the hearing on March 26, 2019, this Court should consider only the conditions upon which the Debtor should be permitted to continue to use cash collateral on an interim basis.

43. The Court should postpone any consideration of approval of the Disclosure Statement or confirmation of the Plan until the Court has considered whether to appoint a Chapter 11 Trustee.

---

[7] Debtor's motion is reminiscent of similarly untimely and baseless motions filed by Skytec in the District Court on the eve of trial, after LogiSYS's Motion for Contempt was already submitted for resolution in the District Court. *See*, Skytec's Motion for Contempt, for Sanctions, and for Default Judgment (filed on September 3, 2018, two months after the dispositive motions schedule had passed), Civil Dkt. # 156, and Motion for Rule 11 Sanctions (filed two days before the Pretrial Conference), Civil Dkt. #151.

44. With the filing of the Plan, LogiSYS believes that it is now abundantly clear that the Debtor is acting in its own self-interest, looking to elevate the interests of its equity holders over the Debtor's unsecured creditors. This is not permitted under the Bankruptcy Code and a trustee should be appointed so that someone will actually be acting in the best interests of creditors.

## **CONCLUSION**

WHEREFORE, LogiSYS respectfully requests from this honorable court to deny the Urgent Motion for the reasons set forth herein.

Respectfully submitted on this 25th day of March, 2019.

> *s/ CARLOS A. RODRIGUEZ VIDAL*
> Carlos A. Rodríguez-Vidal
> USDC PR 201213
> *s/ SOLYMAR CASTILLO MORALES*
> Solymar Castillo Morales
> USDC PR 218310
> Counsel for Creditor LogiSYS Systems, Inc.
> GOLDMAN ANTONETTI & CORDOVA, LLC
> Post Office Box 70364
> San Juan, PR 00936-8364
> Telephone No.: (787) 759-4117
> Facsimile No.: (787) 767-9177
> Email: crodriguez-vidal@gaclaw.com
> scastillo@gaclaw.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this same date I electronically filed the foregoing document with the Clerk using CM/ECF system, which will send notification of such filing to Debtor(s) attorney, the US Trustee and to all CM/ECF participants.

Respectfully submitted on this 25th day of March, 2019.

*s/ CARLOS A. RODRIGUEZ VIDAL*
Carlos A. Rodríguez-Vidal
USDC PR 201213
*s/ SOLYMAR CASTILLO MORALES*
Solymar Castillo Morales
USDC PR 218310
Counsel for Creditor LogiSYS Systems, Inc.
GOLDMAN ANTONETTI & CORDOVA, LLC
Post Office Box 70364
San Juan, PR 00936-8364
Telephone No.: (787) 759-4117
Facsimile No.: (787) 767-9177
Email: crodriguez-vidal@gaclaw.com
scastillo@gaclaw.com